UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PATRICIA SLACK, Individually and as the surviving mother of CHARLES ROUNDTREE, JR., BERNICE ROUNDTREE as the representative of the estate of CHARLES ROUNDTREE, JR. and all Statutory Beneficiaries and TAYLOR SINGLETON, *Plaintiffs,* | § | |
| VS. | § | CIVIL ACTION NO. 5:18-CV-1117 |
| THE CITY OF SAN ANTONIO, TEXAS AND STEVE CASANOVA, *Defendants.* | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

COMES NOW, Patricia Slack ("Slack"), Individually and as the surviving mother of Charles Roundtree, Jr., Bernice Roundtree, as the Representative of the estate of Charles Roundtree, Jr. and all statutory beneficiaries, and Taylor Singleton, complaining of Defendants, the CITY OF SAN ANTONIO, Texas, more particularly the CITY OF SAN ANTONIO Police Department ("SPD") and Steve Casanova ("Casanova"), and for cause would show the Honorable Court as follows:

## I. NATURE OF THE ACTION

1. This is an action brought by the Plaintiffs against The CITY OF SAN ANTONIO, Texas and San Antonio Police Officer Steve Casanova for his use of excessive force resulting in the death of Charles Roundtree, Jr. ("Roundtree") and the injuries sustained by Taylor Singleton ("Singleton") and Davante Snowden ("Snowden") under the color of law in violation of their individual rights under the Fourth Amendment of the United States Constitution and in violation of their civil rights pursuant to 42 U.S.C. § 1983. Furthermore, Plaintiff Slack and Roundtree's

minor son are entitled to recover damages arising from the decedent's wrongful death as applied under 42 U.S.C § 1983 and all other applicable laws complaining of the various acts listed below and for their wrongful death cause of action.

2. Plaintiffs allege that The CITY OF SAN ANTONIO and its policy makers, City Manager, Sheryl Sculley ("Sculley"), Chief of Police, William McManus ("McManus"), the San Antonio City Council, and Mayor of San Antonio, Ron Nirenberg ("Nirenberg") (collectively referred herein as the "Policymakers") failed to properly supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force, including those officers repeatedly accused of such acts. The Policymakers, specifically City Manager Sculley, along with Chief of Police McManus had a duty, but failed to implement and/or enforce policies, practices and procedures for the SPD that respected Roundtree, Singleton and Snowden's constitutional rights. This duty was delegated to the San Antonio City Council who hired City Manager Sculley to carry out the actions and policies of the council by overseeing the day-to-day operation of The CITY OF SAN ANTONIO. Defendant The CITY OF SAN ANTONIO and its Policymakers', specifically City Manager Sculley and Chief of Police McManus, failure to implement the necessary policies and the implementation of unconstitutional policies deprived Roundtree, Singleton and Snowden of their rights under the Constitution and caused them unwarranted and excruciating physical and mental anguish and eventually Roundtree's death. Defendant Casanova consciously disregarded the rights of Plaintiffs, knowing that the Policymakers would approve of his actions, which Chief of Police McManus went on the record to publicly defend Defendant Casanova despite the fact that a thorough investigation had not been completed. For these civil rights violations and other

causes of action discussed herein, Plaintiffs seek answers and compensation for their damages and the wrongful death of Roundtree.

## II. PARTIES

3. Plaintiff, Patricia Slack is a citizen of the United States and a resident of San Antonio, Texas. Patricia Slack is the surviving mother of Charles Roundtree, Jr., decedent, and brings this wrongful-death action under 42 U.S.C § 1983 and all other applicable laws complaining of the various acts listed below.

4. Plaintiff, Bernice Roundtree is a citizen of the United States and a resident of San Antonio, Texas. Bernice Roundtree is qualified, and acting as the Representative of the Estate of Charles Roundtree, Jr., and brings this wrongful-death and survival action on behalf of the Estate of Charles Roundtree, Jr. and all statutory beneficiaries as applied under 42 U.S.C § 1983 and all other applicable laws complaining of the various acts listed below.

5. Plaintiff, Taylor Singleton is a citizen of the United States and a resident of San Antonio, Texas and brings an individual claim for excessive force under 42 U.S.C § 1983 and all other applicable laws complaining of the various acts listed below.

6. Defendant the CITY OF SAN ANTONIO is a municipality located in San Antonio, Texas. The CITY OF SAN ANTONIO funds and operates the SPD, and Sculley, as City Manager serves as the City's chief administrator. The City Manager is responsible for carrying out the actions and policies of the council by overseeing the day-to-day operation of the organization. Council members also rely on the City Manager to provide them with professional advice before they take action on a specific issue. City Manager Sculley along with Chief of Police McManus and Mayor Nirenberg were responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and

omissions, challenged by this suit. The CITY OF SAN ANTONIO POLICE DEPARTMENT is also responsible for preventive, investigative, enforcement services and assuring safety for all citizens of The CITY OF SAN ANTONIO. The CITY OF SAN ANTONIO can be served by serving its registered agent Robert F. Greenblum at the Office of the City Attorney, 100 Military Plaza, City Hall, Third Floor, San Antonio, TX 78205 or wherever he may be found. Additional service is being made on Mayor Ron Nirenberg, City Hall, 100 Military Plaza, San Antonio, TX 78205 and Chief of Police, William McManus, 214 W Nueva St, San Antonio, TX.

7. Defendant Steve Casanova, upon information and belief, is a resident of San Antonio, Texas, and at all times material herein was a police officer for The CITY OF SAN ANTONIO. Casanova may be served at 315 South Santa Rosa, San Antonio, Texas 78207 or wherever he may be found.

## III. JURISDICTION AND VENUE

8. Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent Roundtree and Singleton, by constitutional and statutory provisions

9. Venue is proper in this court because the causes of action occurred within the Western District of Texas, San Antonio Division.

## IV. FACTS

10. On October 17, 2018, Roundtree, Singleton and Snowden were having conversations, surfing the internet and listening to music in the living room of a residence they were visiting located at 217 Roberts St., San Antonio, Texas 78207 (the "Residence"). Roundtree, Singleton and Snowden were authorized to be at the Residence and were not

committing any penal offenses when Defendant Casanova, without any warning, permission or a no-knock warrant, opened the door to the Residence and shined a bright light. At no time did Defendant Casanova identify himself as a San Antonio police officer.

11. Startled and frightened by Defendant Casanova's unauthorized attempt to enter the Residence, Roundtree, Singleton and Snowden tried to identify who was at the door but were unable to do so because Defendant Casanova blinded them with a bright light he shined directly at them. Not knowing who it was at the door, Roundtree, Singleton and Snowden was moving towards the back of the house when Defendant Casanova started to fired upon them. As a result of Defendant Casanova's actions, Snowden was shot in the buttocks and Roundtree was struck in the chest causing Roundtree's painful death after suffering for a period of time without any medical attention from Defendant Casanova. Singleton, fearing she would also be shot, suffered extreme and severe mental and emotional distress, agony and anxiety. Singleton continues to experience psychological trauma as result of being shot at.

12. Contrary to the reports of Chief of Police McManus, Snowden did not reach in his waist for a gun nor did he make any gestures that would suggest he was attempting to fire a gun at Defendant Casanova or any other person. Roundtree, Singleton and Snowden, at all times, were unarmed. Roundtree, Singleton and Snowden did not make any threatening gestures toward Defendant Casanova or any other person.

13. On the day Defendant Casanova shot Snowden and killed Roundtree, the decedent was NOT committing any violent offense and in fact, the decedent, Singleton and Snowden posed no threat of harm to Defendant Casanova or to anyone for that matter.

14. Defendant Casanova had no probable cause or reasonable suspicion to believe that Roundtree, Singleton and Snowden were or attempting to commit a crime. Roundtree,

Singleton and Snowden did not have a gun in their hands or on their person nor were they attempting to cause bodily harm to Defendant Casanova or anyone else. Roundtree, Singleton and Snowden did not posed an immediate threat to the safety of Defendant Casanova or others, when Defendant Casanova, for no lawful reason, fatally shot Roundtree in the chest and Snowden in the buttocks.

15. Defendant, the CITY OF SAN ANTONIO and SPD have a longstanding record of not providing SPD officers with adequate training, adequate supervision or discipline, not preventing excessive force and extrajudicial killings by San Antonio Police officers. The City Manager of San Antonio had in fact delegated policy-making authority to Chief McManus, giving him the responsibility for setting training policies and knew that there were training issues which resulted in the killing of Roundtree and the injuries to Singleton and Snowden. As a result of the lack of training, supervision, discipline and the official customs or policies of the SPD, San Antonio remains at the top of the list in the state of Texas for police misconduct. Defendant Casanova's inadequate training was a moving force in the death of Roundtree and the injuries to Singleton and Snowden. Despite the number of internal affairs complaints lodged against police officers for misconduct, the SPD continues to cover-up bad acts and ratify the actions of its police officers as it now attempts to do with this case.

16. The internal affairs section of the SPD has received hundreds of complaints involving the use of excessive force by police officers rarely taking any disciplinary action against the officers, including the shooting deaths of Marquise Jones and Antronie Scott. This has resulted in a failure to supervise, discipline, counsel, or otherwise control police officers who are known or should be known to engage in the use of excessive force. The police officers know at the time they act that their use of excessive and/or deadly force in conscious disregard of the

rights and safety of innocent third parties will meet with the approval of City Policymakers. Defendant Casanova is a part of "a police code of silence wherein other officers and supervisors habitually cover[ed] up the use of excessive force by fabricating accounts to the media and in official reports and internal affairs investigations. This is exactly what has happened with the shooting death of Roundtree and the injuries to Singleton and Snowden.

17. The problems in the SPD's Internal Affairs in particular run more than policy-deep. Internal Affairs' gut reaction to most complaints is to protect fellow officers and to disbelieve and attack the credibility of complainants. Individuals in San Antonio are afraid and intimidated to report the bad acts of police officers out of the fear of being retaliated against. The frequent use of deadly force by SAPD officers appears to establish a pattern or practice of resorting to deadly force more often than other Texas cities of similar size. The number of officer involved shootings in San Antonio as represented by the SAPD OIS logs for 2012, 2013, 2014, and 2015 represent a total of sixty nine (69) officers having used deadly force against forty four (44) suspects in a four year period. The logs represent only incidents where an officer discharged a weapon. The logs do not include the use of other forms of deadly force by officers (for example injuries from impact weapons or other options that result in broken bones or serious bodily injury to suspects). Reports from the Police Executive Research Forum published in 2008, the Matrix Consulting Group published in 2010, and Morris & McDaniel Consultants also published in 2010 further identify the problems which have not been corrected.

18. As indicated above, Defendant Casanova shot Roundtree in the chest and Snowden in the buttocks for no lawful reasons. Despite the fact that Roundtree, Singleton and Snowden did not have a weapon in their hands or on their person, Defendant Casanova shot first and asked questions later, which is the custom and practice of the SPD.

19. There is no evidence that Defendant Casanova or any third party were in imminent danger of death or bodily harm. The SPD Drawing or Displaying Firearms policy requires that a threat or reasonable belief that there is a threat to life or they have reasonable fear for their own safety and/or the safety of others, exist in order to authorize an officer to draw or display her/his firearm. Upon information and belief, SPD officers are provided with inadequate training on the use of deadly force as demonstrated by the acts of Defendant Casanova and other officer involved shootings.

20. The SPD did not provide adequate training to Defendant Casanova in the use of deadly force and the use of non-deadly force.

21. The SPD did not provide adequate training to Defendant Casanova on proper arrest, confrontation techniques and de-escalation of force.

22. The defendants knew or should have known that the training was inadequate or nonexistent. The City of San Antonio ratified the acts of Defendant Casanova and have continued to cover-up for him.

23. As confirmed by Singleton, Snowden posed no threat of imminent danger of death or great bodily harm to Defendant Casanova or any other person in the immediate area.

24. At the time Defendant Casanova drew his gun, there had been no previous interaction between the occupants of the Residence and Defendant Casanova, and at no time did Roundtree, Singleton or Snowden do any act to justify Defendant Casanova's use of deadly force. The drawing of an Officer's weapon inherently assumes that the use of force will cause death or serious bodily injury to the suspect, and is to be applied under very narrowly defined circumstances. In accordance with the San Antonio Police Department's Use of Deadly Force

procedures authorized by the Policymakers, specifically City Manager Sculley and Chief McManus, "Officers will only use deadly force under the following circumstances:

A. When attempting to affect an arrest, officers should use verbal communications prior to the use of non-deadly force, if possible.

B. If verbal communication has been exhausted or proven ineffective, officers are authorized to use open/empty hands control.

C. If an open/empty hands control has been exhausted or proven ineffective; officers are authorized to use physical force.

D. If physical force has proven ineffective or is not a reasonable option based upon the circumstances, officers are authorized to use an intermediate weapon to affect an arrest.

25. Roundtree, Singleton and Snowden posed no risk to Defendant Casanova or any other person. Roundtree, Singleton and Snowden had not committed a crime nor were they actively resisting when Defendant Casanova fired upon them.

26. Defendant Casanova's unlawful and unwarranted acts, lack of training and the official customs or policies of the SPD caused Roundtree's wrongful death and the injuries suffered by Singleton and Snowden.

27. Plaintiffs would also show that at all times material hereto, Defendant Casanova was acting under the color of law when he shot and killed Roundtree and caused the injuries to Singleton and Snowden.

28. Plaintiffs would further show that Defendant Casanova's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures of the SPD in regards to the use of deadly force for which the CITY OF SAN ANTONIO and the Policymakers, specifically, City Manager Sculley and Chief McManus knew or should have

known but never provided the requisite and proper training.

29. Moreover, no reasonably competent official would have concluded that the actions of Defendant Casanova described herein would not violate Roundtree, Singleton and Snowden's constitutional rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendant Casanova's conduct was justified nor was the treatment of Roundtree, Singleton and Snowden, reasonable.

30. As a direct and proximate result of the Defendants' conduct, Plaintiffs have sustained substantial damages and pecuniary loss.

31. Roundtree was eighteen (18) years old when he was killed by Defendant Casanova. He was in good health, with a reasonable life expectancy of living at least 66 more years to age 84. Roundtree was the father of a four month old son, one of the statutory beneficiaries.

32. Upon information and belief, the SPD has not implemented policies and procedures to aggressively curtail deadly shooting cases that's been a major problem. Defendant Casanova has not been terminated despite his wrongful acts. Immediately after the shooting, in defense of Defendant Casanova and prior to conducting a complete and thorough investigation, Chief McManus initially reported that Roundtree had reached in his waistband for a gun prior to being shot.

## V. CAUSES OF ACTION

### A. Cause of Action against Steve Casanova under 42 U.S.C. §1983 for Violation of the Plaintiffs' Fourth Amended Right to be free from excessive force.

33. Plaintiffs would show that the force used by Defendant Casanova was excessive, violated Roundtree, Singleton and Snowden's clearly established constitutional rights, and was not objectively reasonable under the circumstances.

34. Plaintiffs would show that Roundtree was killed and Singleton and Snowden were injured as a direct result of Defendant Casanova's use of force that was clearly excessive and the excessiveness of which was clearly unreasonable. That is, Defendant Casanova, without justification and the need to do so, used excessive and deadly force as described above and killed Roundtree without legal justification. Defendant Casanova's use of force was clearly excessive and clearly unreasonable because Roundtree, Singleton and Snowden never made any threatening gestures toward Defendant Casanova and did not pose an immediate threat to the safety of Defendant Casanova or others.

35. Defendant Casanova was not provoked when he fired multiple shots inside an occupied home for no lawful or justifiable reason. Roundtree died as a result of the gunshot wound to his chest, Snowden was injured and Singleton feared for her life. The excessive and deadly force used by Defendant Casanova was not reasonable or justified, nor was it necessary under the circumstances.

36. Defendant Casanova's actions were not objectively reasonable because neither Roundtree, Singleton and Snowden, nor any of the occupants of the Residence, posed an immediate risk of serious physical harm to any officers or any other person.

37. The force used by Defendant Casanova was objectively unnecessary, excessive and unreasonable under the circumstances, as Roundtree, Singleton and Snowden did not pose

an immediate threat to the safety of Defendant Casanova or others and the use of such excessive and deadly force was unnecessary. Rather, Defendant Casanova embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact, caused Roundtree, Singleton and Snowden to suffer extreme and severe mental and emotional distress, agony and anxiety.

38. Further, Defendant Casanova's conduct violated a clearly established constitutional right—the right to be free from excessive force—that was established well before Defendant Casanova shot and killed Roundtree and injured Singleton and Snowden. *See, e.g., Reyes v. Bridgewater,* 362 Fed. Appx. 403, 409 (5th Cir. 2009) ("The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others."). More specifically, the right to be free from the use of excessive force was clearly established under the particular circumstances presented to Oliver. *See Lytle v. Bexar Cty., Tex.,* 560 F.3d 404, 417–18 (5th Cir. 2009) ("It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others."). It was also clearly established at the time, based on three cases, that psychological injuries can be sufficient to state a Fourth Amendment excessive force claim.[1]

39. As a result of these Constitutional violations to Roundtree, Singleton and Snowden and the injuries they sustained, Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

[1] The extent of an injury is an element of an excessive force claim that must be clearly established in the second prong of the qualified immunity analysis. The plaintiff's physical injuries in *Dunn* were only bruises, but she suffered substantial psychological injuries, sufficient to demonstrate the violation of a clearly *Dunn v. Denk,* 79 F.3d 401, 403 (5th Cir. 1996).

**B. Cause of Actions against the City of San Antonio under 42 U.S.C. § 1983 for violation of the Plaintiffs' Fourth Amendment Rights.**

40. The City of San Antonio is liable for all damages suffered by the Plaintiffs pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) and 42 U.S.C. § 1983, based on an official policy or custom of the San Antonio Department of which the City Council, the City Manager, the Mayor, and Chief of Police McManus all had actual or constructive knowledge that was a moving force behind the constitutional violations alleged herein.

**1. The City of San Antonio failed to train its officers on use of force and in dealing with individuals during an entry into an occupied home.**

41. Plaintiffs incorporate by reference paragraphs 1 through 40 as if fully set forth herein. Prior to October 17, 2018, the Policymakers, specifically, City Manager Sculley and Chief McManus knew or should have known that Defendant Casanova exhibited a pattern of escalating encounters with the public.

42. Defendant Casanova was acting under the color of law and acting pursuant to customs, practices and policies of the CITY OF SAN ANTONIO and the SPD in regards to the use of deadly force as authorized and/or ratified by the Policymakers, specifically City Manager Sculley and Chief McManus when he deprived Roundtree, Singleton and Snowden of rights and privileges secured to them by the Fourth Amendment to the United States Constitution and by other laws of the United States, by the city of San Antonio failing to provide proper training in the use of deadly in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

43. With respect to the claims made the basis of this lawsuit, the CITY OF SAN ANTONIO and the SPD failed to adequately train, supervise or discipline its employees regarding the unnecessary use of deadly force. The failure to train, supervise or discipline its

employees in a relevant respect reflects a deliberate indifference to the CITY OF SAN ANTONIO, SPD, City Manager Sculley and Chief McManus to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

44. Defendant the CITY OF SAN ANTONIO, SPD and Chief McManus under the direction of the City Council and the City Manager developed and maintained a policy of deficient training of its police force in the use of force, including the use of deadly force in the apprehension and the wrongful detention of individuals. The CITY OF SAN ANTONIO's training is designed and implemented by City Manager Sculley and Chief McManus to act in this regard.

45. The CITY OF SAN ANTONIO, SPD, City Manager Sculley and Chief McManus' failure to provide adequate training to its police officers regarding the use of deadly force and wrongful detentions reflect deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of Roundtree, Singleton and Snowden's constitutional rights, including Roundtree's death, a reasonable probability.

46. Plaintiffs would show that Defendant Casanova's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which the CITY OF SAN ANTONIO, SPD, City Manager Sculley and Chief McManus knew or should have known but never provided the requisite and proper training.

47. On information and belief, Defendant the CITY OF SAN ANTONIO, SPD, City Manager Sculley and Chief McManus, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Roundtree, Singleton and Snowden, failed to implement and/or enforce the policies, procedures; and

practices necessary to provide constitutionally adequate protection and assistance to Roundtree, Singleton and Snowden during their struggle to survive and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Roundtree, Singleton and Snowden from receiving the protection, assistance and care they deserved.

48. For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Roundtree, Singleton and Snowden's constitutional rights:

(a) The inadequacy of SPD'S policies, training, supervision or discipline relating to the use of deadly force;

(b) The inadequacy of SPD's policies, training, supervision or discipline relating to the use of non-lethal control devices and tactics;

(c) The adoption of completely subjective continuum of force policy that can be expressly avoided and which leaves the use of deadly force exclusively to the unchecked discretion of officers on the scene;

(d) The adoption of a policy that allows officers to use the degree of force that the officer feels brings the situation quickly under control as per his or her individual judgment even if that method is deadly force;

(e) Lack of training in regard to effective communication with citizens while giving them commands and determining their compliance.

(f) Using excessive and/or deadly force against Roundtree, Singleton and Snowden although they caused no immediate threat.

(g) Using excessive and/or deadly force against Roundtree, Singleton and Snowden while they were seated in an occupied home;

49. In addition, Defendant CITY OF SAN ANTONIO, as applicable, failed and refused to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the use of deadly force and the wrongful detention of individuals. In so doing, Defendant the CITY OF SAN ANTONIO knew that it was acting against the clear dictates of current law, and knew that as a direct

consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Roundtree's death and Singleton and Snowden's injuries-- in all reasonable probability would occur.

50. The CITY OF SAN ANTONIO'S failure to properly train, supervise and discipline its police officers regarding the use of force was the proximate cause of the violations of Roundtree, Singleton and Snowden's constitutional rights including the unnecessary taking of Roundtree's life.

**2. The City of San Antonio failed to adequately supervise or discipline its officers for violent, aggressive, and excessive force and, in failing to do so, ratified and encouraged the conduct of its officers, including Defendant Casanova.**

51. Plaintiffs incorporate by reference paragraphs 1 through 50 as if fully set forth herein.

52. On Plaintiffs' governmental liability claim against the City of San Antonio for failing to supervise and/or discipline its officers for prior violations and the resulting lack of supervision:

a. the City of San Antonio and Chief McManus failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal;

b. Chief McManus was deliberately indifferent to the need to supervise and/or discipline its officers and/or employees adequately;

c. the failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Roundtree, Singleton and Snowden's constitutional rights.

d. the City of San Antonio and Chief McManus failed to adequately supervise and/or discipline Defendant Casanova for shooting in an occupied home for no lawful reason, resulting in the death of Roundtree and the injuries to Singleton and Snowden.

53. Despite having knowledge of Defendant Casanova's violation of the SPD's policies and other best police practice as described above, the City of San Antonio, the City

Council and Chief McManus refused to adequately discipline Defendant Casanova. The City's Policymakers were well aware of the out of control behavior of Defendant Casanova but failed to take any actions. The City of San Antonio's failure to adequately supervise and/or discipline its officers was therefore the moving force behind Plaintiffs' damages.

## VI. DAMAGES

54. **Actual damages.** Plaintiffs incorporate by reference paragraphs 1 through 53 as if fully set forth herein. Defendants' acts and/or omissions were a proximate cause and the moving force behind the following actual damages suffered by the Plaintiffs and Defendants should be held jointly and severally liable for the following damages:

a. **Estate of Charles Roundtree, Jr. (Survival Claim).**
   1. Conscious pain and mental anguish suffered by Charles Roundtree, Jr. prior to his death; and
   2. Funeral and burial expenses.
   3. Exemplary Damages.

b. **Patricia Slack and the statutory beneficiaries (as wrongful death beneficiaries of Charles Roundtree, Jr.).**
   1. Mental anguish—the emotional pain, torment, and suffering experienced by Patricia Slack and the statutory beneficiaries because of the death of Charles Roundtree, Jr.—that Patricia Slack and the statutory beneficiaries sustained in the past and that they will, in reasonable probability, sustain in the future;
   2. Loss of companionship and society—the loss of the positive benefits flowing from the love, comfort, companionship, and society that Patricia Slack and the statutory beneficiaries would have received from Charles Roundtree, Jr. had he lived—that Patricia Slack and the statutory beneficiaries sustained in the past and that they will, in reasonable probability, sustain in the future;
   3. Pecuniary loss—loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Patricia Slack and the statutory beneficiaries would have received from Charles Roundtree, Jr. had he lived—that Patricia Slack and the statutory beneficiaries sustained in the past and that they will, in reasonable probability will sustain in the future.

c. **Taylor Singleton (excessive force).**
   1. Singleton was in the Residence and within Defendant Casanova's line of fire when Casanova fatally shot Roundtree and injured Snowden.

Singleton was traumatized and in shock and has suffered direct personal injury in the form of mental anguish and severe emotional distress.

2. Mental anguish and emotional distress sustained as a result of Defendant Casanova's excessive force.
3. Mental anguish and emotional distress sustained as a result of Defendant's excessive force.

55. **Punitive/Exemplary Damages against Defendant Casanova.** Punitive/exemplary damages are recoverable under section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Here, the conduct of Defendant Casanova was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of the Plaintiffs. As such, Plaintiffs request punitive and exemplary damages to deter this type of conduct in the future.

56. Prejudgment and post judgment interest.

57. Costs of court.

58. Reasonable and necessary attorney's fees incurred by the Plaintiffs through trial, and reasonable and necessary attorney's fees that may be incurred by Plaintiffs for any post-trial proceedings, or appeal, interlocutory or otherwise, pursuant to 42 U.S.C. § 1988.

59. Plaintiffs seek unliquidated damages in an amount that is within the jurisdictional limits of the court.

## VII. CONDITIONS PRECEDENT

60. Plaintiffs reserve their rights to plead and prove the damages to which they are entitled to at the time of trial. All conditions to Plaintiffs' recovery have been performed or have occurred.

## VIII. TRIAL BY JURY

61. Plaintiffs have paid a jury fee and demands trial by jury.

## IX. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiffs have and recover judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiffs are justly entitled.

Respectfully submitted,

By: /s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714
**WASHINGTON LAW FIRM, P.C.**
325 N. St. Paul St., Suite 3950
Dallas, Texas 75201
214 880-4883
214-751-6685 - fax

**ATTORNEYS FOR PLAINTIFFS**