IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| PATRICIA SLACK, INDIVIDUALLY AND AS THE SURVIVING MOTHER OF CHARLES ROUNDTREE, JR.; TAYLOR SINGLETON, BERNICE ROUNDTREE, AND AS REPRESENTATIVE OF THE ESTATE OF CHARLES ROUNDTREE, JR. AND ALL STATUTORY BENEFICIARIES; AND DAVANTE SNOWDEN, <br><br> *Plaintiffs,* <br><br> vs. <br><br> CITY OF SAN ANTONIO, TEXAS, STEVE CASANOVA, SAN ANTONIO POLICE OFFICER; <br><br> *Defendants.* | SA-18-CV-01117-JKP |

## **ORDER**

Before the Court in the above-styled cause of action are the following motions, which were referred to the undersigned for disposition: Defendants' Motion to Exclude Expert Opinions and Strike Testimony of Stan V. Smith, Ph.D. [#89]; Defendant Steve Casanova's Motion to Compel Plaintiffs' Answers to Interrogatories and Production of Documents [#100]; Plaintiffs' Motion to Exclude/Limit Expert Testimony of Defendants' Designated Expert, Digvijay Tanwar [#103]; Plaintiffs' Amended Motion to Exclude/Limit Expert Testimony of Defendants' Designated Expert, Albert Ortiz [#107]; Defendant Steve Casanova's Motion to Compel Re-Deposition of Incarcerated Witness Snowden [#110]; and Defendants' Opposed Motion to Extend Scheduling Order Deadline to Conduct Mediation [#118].

The Court held a telephonic hearing on the motions on April 6, 2021, at which all parties appeared through counsel. At the close of the hearing, the Court made certain oral rulings

pursuant to its authority under 28 U.S.C. § 636(b)(1)(A), which it now memorializes with this written Order.

## I. Background

This case arises out of the death of Charles Roundtree, Jr., an 18-year-old, and the injuries allegedly sustained by Taylor Singleton and Devante Snowden during an encounter with the San Antonio Police Department ("SAPD") on October 17, 2018. Plaintiffs Patricia Slack (the mother of Roundtree), Bernice Roundtree (the representative of Roundtree's estate), Singleton, and Snowden bring this action against the City of San Antonio and Officer Steve Casanova for violations of their civil rights pursuant to 42 U.S.C. § 1983, seeking wrongful death and survival damages as to Roundtree and for the injuries sustained by Singleton and Snowden.[1]

According to Plaintiffs' Third Amended Complaint, which is the live pleading in this case, Roundtree, Singleton, and Snowden were gathered the evening of October 17, 2018, at a residence located at 217 Roberts Street, San Antonio, Texas 78207. (Third Am. Compl. [#72] at ¶ 12.) Plaintiffs allege that Officer Steve Casanova and two other SAPD officers were purportedly investigating a misdemeanor assault that allegedly occurred outside of the residence, when Officer Casanova entered the residence via the front door without any verbal warning and shone a bright light in direction of the three individuals inside. (*Id.* at ¶¶ 12–13.) Officer Casanova's entry startled the three individuals, and Snowden walked towards the front door in an attempt to see who was there. (*Id.* at ¶ 13.) Plaintiffs allege that Snowden saw Casanova pointing a gun at him and attempted to turn and walk away when Casanova opened fire, striking

---

[1] There was originally one additional Plaintiff in this case—Diajhanae Williams, the guardian of Roundtree's minor son, K.W., but Williams voluntarily dismissed the claims of K.W. upon discovering that he is not Roundtree's child. (*See* Dismissal [#80].)

Snowden in the back and buttocks and striking Rountree in the chest and barely missing Singleton. (*Id.* at ¶ 14.) Roundtree died from his wounds. (*Id.*) Singleton alleges she witnessed the events and has suffered severe mental and emotional distress as a result. (*Id.*)

Plaintiffs dispute the official police report stemming from the incident, which states that Snowden was reaching for a gun in his waistband at the time Casanova opened fire, and maintain that Roundtree, Singleton, and Snowden were unarmed and did not make any threatening gestures toward Casanova or any other person that would have justified the use of deadly force. (*Id.* at ¶ 15.) Plaintiffs further allege that Snowden, despite not being in possession of any weapon, was arrested and charged with unlawful possession of a firearm. (*Id.*) Plaintiffs claim that Snowden remained in jail for over nine months for a crime he did not commit and that there was no probable cause or reasonable suspicion to ever believe that Roundtree, Singleton, and Snowden had or were attempting to commit a crime. (*Id.* at ¶ 16–17.)

By this suit, Plaintiffs accuse the City of San Antonio of failing to adequately train and supervise its officers and of having a pattern and practice of failing to prevent excessive force and extrajudicial killings by SAPD officers and thereafter ratifying the wrongful conduct. (*Id.* at ¶¶ 19, 31–43.) Plaintiffs challenge SAPD's use-of-force policies as facially unconstitutional. (*Id.* at ¶¶ 27–30.)

Both Plaintiffs and Defendants have filed various discovery motions and challenges to the designated experts of the parties. Defendants have also asked the Court to extend various deadlines in the existing Scheduling Order. The Court first addresses the *Daubert* motions, then the discovery motions, and finally the scheduling issue.

## II. *Daubert* Motions

Defendants have moved to exclude the expert opinions and strike the testimony of Plaintiffs' designated expert Stan V. Smith [#89]. Plaintiffs have in turn moved to exclude or limit the testimony of Defendants' designated experts Digvijay Tanwar and Albert Ortiz. The Court will deny the motions as to Smith and Ortiz and grant the motion as to Tanwar.

**A.      Legal Standard for Admissibility of Expert Opinions**

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that trial judges must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. Subsequent to *Daubert*, Rule 702 of the Federal Rules of Evidence was amended to provide that a witness "qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *See Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702). The Rule 702 and *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical analysis" and other "specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). The overarching focus of a *Daubert* inquiry is the "validity and thus evidentiary relevance and reliability of the principles that underlie a proposed submission." *Watkins*, 121 F.3d at 989 (quoting *Daubert*, 509 U.S. at 594–96). Because the

*Daubert* test focuses on the underlying theory upon which the opinion is based, the proponent of expert testimony need not prove the expert's testimony is correct, but rather that the testimony is reliable.  *Moore*, 151 F.3d at 276.  This determination of reliability includes a preliminary determination of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93.

*Daubert* sets forth four specific factors that the trial court should ordinarily apply when considering the reliability of scientific evidence: (1) whether the technique can or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique.  *Id.*  This test of reliability, however, is "flexible," and these factors "neither necessarily nor exclusively apply to all experts or in every case."  *Kumho Tire Co.*, 526 U.S. at 141.  "Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142.  "The proponent need not prove that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore*, 151 F.3d at 276.

Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule."  Fed. R. Evid. 702, Adv. Comm. Notes (2000).  *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."  *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on

burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**B.     Defendants' Motion to Exclude Plaintiffs' Expert Stan V. Smith, Ph.D. [#89]**

Stan V. Smith, Ph.D., is an economist retained by Plaintiffs to calculate the value of certain losses with respect to the death of Roundtree and the physical injuries of Snowden, such as lost wages and benefits and the loss of household and family services. Defendants retained their own economic expert, Keith Wm. Fairchild, to conduct a separate appraisal of the losses at issue. Defendants challenge the opinions contained in Dr. Smith's expert reports (#98-1 and #98-2) as unreliable and argue that Smith is not qualified to render an opinion on any non-economic damages.

At the Court's hearing, Defendants conceded that Dr. Smith is qualified to render an opinion on Plaintiffs' economic damages and clarified that they are only attacking his qualifications as to non-economic damages. Plaintiffs in turn clarified that they are not proffering Dr. Smith as an expert on mental anguish damages and stated on the record that they are only going to ask Dr. Smith to testify at trial on the economic loss calculations contained in his expert reports. Accordingly, the Court finds Defendants' challenge as to Dr. Smith's qualifications to be without merit.

Defendants' challenge to the reliability of Dr. Smith's economic-damages calculations is also without merit. Defendants' motion fails to identify any issue with the methodology used by Dr. Smith in making his calculations and when pressed at the Court's hearing, Defendants were unable to articulate the basis for their reliability challenge. Rather, Defendants seem to take issue with some of the data used by Dr. Smith in his calculations, such as the inclusion of data related to R.W., who is not in fact Roundtree's minor son. Plaintiffs agreed with Defendants that

some of the data will need to be adjusted based on the evolving facts in this case, which will affect Dr. Smith's calculations. Because Defendants failed to identify any basis for concluding that Dr. Smith's methodology lacked scientific validity or reliability, the Court will deny their motion.

C.  **Plaintiffs' Motion to Exclude Digvijay Tanwar [#103]**

Digvijay Tanwar, a forensic video expert, was retained by Defendants to provide forensic analysis and enhancement of Officer Casanova's body cam audio and video recordings of the incident underlying this suit. Plaintiffs concede that Tanwar is qualified to enhance the audio and video recordings of the incident and should be permitted to testify to the jury on the process he utilized for doing so. Plaintiffs, however, ask the Court to prohibit Tanwar from testifying as to what the video recording depicts, arguing that such testimony does nothing to assist the jurors, who can make their own determination as to whether the video is consistent with or contradicts the various parties' account of the events leading up to and during the police shooting. The Court agrees.

A number of courts have addressed expert testimony on video recordings and have concluded that the expert should not be permitted to interpret the video's contents where the expert is no better suited than a lay person to do so. *See, e.g.*, *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) (affirming exclusion of expert opinion that decedent was not holding firearm because "the jury was entirely capable of analyzing the images and determining whether Fong Lee had anything in his hands"); *Dunlap v. Hood*, No. 3-07-CV-2147-BD, 2009 WL 362292, at *1 (N.D. Tex. Feb. 13, 2009) (prohibiting forensic analyst from testifying as to the contents of video on use-of-force incident because he was "no better suited than the jury to interpret the contents of the video"). Because Tanwar does not have any specialized training or experience to

interpret the video evidence that will be presented to the jury, his proposed testimony on the contents of the video recordings from Officer Casanova's body camera will not assist the jury; rather, the testimony is likely to confuse or invade the province of the jury.  Jurors can interpret the video and audio evidence for themselves.  The Court will therefore grant Plaintiffs' motion and limit Tanwar's testimony to the process he used to enhance the audio and video evidence in this case.

D.     **Plaintiffs' Motion to Exclude Albert Ortiz [#107]**

Defendants retained Albert Ortiz, a veteran police officer, to testify on police procedures, training, investigations, and the use of force.  Ortiz's report opines that any officer in the same or similar circumstances as Officer Casanova could reasonably believe that Snowden posed an imminent danger of death or serious bodily injury and that all of Casanova's conduct comported with the training, policies, and procedures of the City of San Antonio and SAPD.  Plaintiffs challenge the reliability of Ortiz's opinions, arguing that his report is riddled with speculative conclusions regarding the state of mind of the various actors in the use-of-force incident and impermissibly attempts to opine on the ultimate legal issues in this case.

Plaintiffs conceded at the Court's hearing that Ortiz is clearly qualified to testify as a police procedures expert but do not believe he possesses sufficient qualifications to render his own ballistics analysis of the shooting and could have better linked his conclusions to the official policies at issue.  After hearing the arguments of counsel at the hearing, the Court will not exclude the testimony of Ortiz at this time and will deny Plaintiffs' motion.  The denial, however, will be without prejudice to Plaintiffs arguing a motion in limine if the case goes to trial that seeks to limit Ortiz's testimony if he is unable to establish a sufficient predicate for his testimony.

### III.  Discovery Orders

Officer Casanova has moved to compel Plaintiffs to answer certain interrogatories and to produce documents in response to his requests for production.  Casanova has also moved to compel the re-deposition of Snowden, who is currently incarcerated.  The Court will dismiss the motion to compel discovery as moot and will grant the motion as to Snowden's deposition but order the deposition to be conducted on written questions.

A.   **Casanova's Motion to Compel Discovery [#100]**

Casanova's motion to compel discovery argues that Plaintiffs' responses to certain interrogatories and requests for production are incomplete and asks the Court to compel supplementation.  Prior to the Court's hearing, the parties filed a written advisory [#120], which narrowed and clarified what remains in dispute.  The Court reviewed the advisory with the parties at the hearing and confirmed that all of the outstanding discovery responses have either already been provided by Plaintiffs (or there are no responsive documents to the request) or the discovery requests have been withdrawn by Casanova.

More specifically, Plaintiffs represented on the record that they have already provided Casanova with the medical authorizations needed to obtain medical records from Snowden's various medical providers and documents relied upon to support the computation of Plaintiffs' damages.  Plaintiffs also represented that there are no documents responsive to Casanova's request for documents regarding prescription medication and payment summary forms for medical bills for services rendered.  Casanova stated on the record that he has withdrawn his request regarding social media sites used by Plaintiffs, his interrogatory regarding the heirs of Roundtree, and his second requests for production to Slack and Bernice Roundtree.  Finally, Casanova's request for the tax returns of Snowden and Roundtree are moot because neither filed

9

any tax returns and as to Slack because she is not requesting damages associated with the loss of her own earnings. In summary, the motion should be dismissed as moot.

B.      Casanova's Motion to Re-Depose Snowden [#110]

Snowden is currently incarcerated in the Dallas County Jail. Defendants took Snowden's deposition on March 16, 2021, via Zoom and by video. During the deposition, Defendants' counsel repeatedly attempted to ask Snowden questions regarding the status of his pending criminal charges, and Snowden invoked the Fifth Amendment and refused to answer. After the deposition, Defendants discovered that two weeks prior to the deposition, on March 2, 2021, Snowden had pleaded guilty to aggravated robbery and was sentenced to six years in prison. Casanova therefore asks the Court to permit the re-deposition of Snowden so that counsel can challenge as improper Snowden's assertion of the Fifth Amendment privilege against self-incrimination. Casanova also argues that Plaintiffs' counsel improperly coached Snowden during his deposition. Casanova argues that he should be permitted to pursue this line of questioning for future impeachment of the witness.

The Court will grant in part Casanova's motion and permit a limited re-deposition of Snowden on the status of his aggravated robbery charge. However, due to the fact that Snowden is incarcerated and the difficulties associated with arranging for a second deposition with the jail, the Court will order the deposition to be in the form of a deposition on written questions. The deposition on written questions should be limited to those questions associated with the desired impeachment testimony. After reviewing the deposition transcript, the Court is not persuaded that Plaintiffs' counsel engaged in any improper witness coaching.

### IV.  Defendants' Motion to Extend Deadlines [#118]

Defendants ask the Court to extend the mediation deadline from March 31, 2021, to May 28, 2021.  Plaintiffs do not oppose the extension of the mediation deadline but do not want any further extensions of any other deadlines, such as the deadline for filing dispositive motions. The Court will therefore grant the motion and extend the mediation deadline alone.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Exclude Expert Opinions and Strike Testimony of Stan V. Smith, Ph.D. [#89] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Steve Casanova's Motion to Compel Plaintiffs' Answers to Interrogatories and Production of Documents [#100] is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Exclude/Limit Expert Testimony of Defendants' Designated Expert, Digvijay Tanwar [#103] is **GRANTED** as set forth herein.

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Motion to Exclude/Limit Expert Testimony of Defendants' Designated Expert, Albert Ortiz [#107] is **DENIED WITHOUT PREJUDICE** to filing a motion in limine if the case proceeds to trial.

**IT IS FURTHER ORDERED** that Defendant Steve Casanova's Motion to Compel Re-Deposition of Incarcerated Witness Snowden [#110] is **GRANTED IN PART** as set forth herein.

**IT IS FINALLY ORDERED** that Defendants' Opposed Motion to Extend Scheduling Order Deadline to Conduct Mediation [#118] is **GRANTED** such that the mediation deadline in this case is now **May 31, 2021**.

**IT IS SO ORDERED.**

SIGNED this 13th day of April, 2021.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE