**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **BERNICE ROUNDTREE, Individually** | § | |
| **and on behalf of the Estate of CHARLES** | § | |
| **ROUNDTREE, JR. and the Statutory** | § | |
| **Beneficiaries; TAYLOR SINGLETON;** | § | |
| **and DEVONTE SNOWDEN,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| *v.* | § | **No. SA-18-CV-01117-JKP** |
| | § | |
| **CITY OF SAN ANTONIO, TEXAS; and** | § | |
| **STEVE CASANOVA,** | § | |
| *Defendants,* | § | |

---

**DEFENDANT STEVE CASANOVA'S MOTION TO EXCLUDE OR LIMIT OPINIONS
OF DR. JOHN G. PETERS**

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

     Now Comes DEFENDANT STEVE CASANOVA ("Defendant" or "Casanova"), and files this its Motion to Exclude or Limit Expert Opinions of Dr. John G. Peters ("Peters").  In support thereof would show the Honorable Court as follows:

**I.**
**BACKGROUND**

1.    This is an action brought by Plaintiffs against Officer Casanova and the City of San Antonio, Texas, on October 23, 2018, alleging Casanova's alleged use of excessive force resulting in the October 17, 2018, shooting injury sustained by Snowden and resulting in the death of Charles Roundtree, Jr. ("decedent") in violation of 42. U.S.C. §1983 under the Fourth Amendment of the United States Constitution.

2.    When this Court ruled on Officer Casanova's Motion for Summary Judgment, Your Honor noted that:

The video evidence in this case does not contradict Plaintiffs' version of the facts such that no reasonable jury could believe it. How Snowden approached the front door, whether he possessed a gun, whether he reached for anything, whether he grasped something in his waistband, and whether he turned to walk away from Casanova are facts that are material to an excessive force determination. The Court is unable to determine whether Office Casanova acted in an objectively reasonable manner without resolving these factual disputes. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 739 (5th Cir. 2000) (recognizing the principal that a "district court cannot draw conclusions of law from disputed facts at the summary judgment phase").

[Dkt. 217].

3.     The Fifth Circuit agreed that the video evidence was not conclusive under *Scott v. Harris*, and affirmed based on the facts pleaded in the complaint, and required by this court to be taken as true:

In this interlocutory appeal of the district court's denial of Officer Steve Casanova's motion seeking summary judgment, on grounds of qualified immunity, our review is limited to deciding whether, given the facts assumed by the district court to be true, such conduct would have been objectively unreasonable, in light of clearly established law, on October 17, 2018. We agree that it would have been. We decide this at the early, summary judgment state of the proceeding and express no view as to the ultimate outcome. Additionally, at this juncture of the proceedings, we pretermit further consideration of whether Casanova's conduct relative to Singleton and Roundtree was intentional rather than inadvertent.

*Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900, at *18 (5th Cir. June 10, 2024).

4.     This Motion attempts to focus on those facts for trial, in the context of Dr. John Peters' opinions against Defendant Officer Casanova. Plaintiffs have not met their burden to proffer expert opinion testimony meeting the standard of Rule 702 or has offered opinions that this Court should exclude under its gatekeeper role. Officer Casanova will show that Dr. Peters' generic conclusions about police training and standards fails to apply his expertise to the facts as the law requires. He seeks to substitute his views as to whether Officer Casanova complied with the standards under

*Graham v. Connor*[1], and other controlling law, which the Court will explain and submit to our jury. His opinions should be stricken or limited to the matters that meet the legal standard for such evidence.

## II.
## DR. PETERS' QUALIFICATIONS & OPINIONS

5.     The parties deposed Dr. Peters on March 13, 2025. Prior to that, Peters was designated as an expert on January 15, 2021, [Dkt. 78] and prepared an expert report containing his CV and list of documents reviewed. [Dkt. 193, Exhibit 11—Tabs 1 and 2]. Dr. Peters' qualifications, training and experience are documented in his CV, Report, and deposition testimony.

6.     This Motion is filed according to the Seventh Amended Scheduling Order [Dkt. 76] wherein it states "An **objection to the reliability of an expert's proposed testimony** under Federal Rule of Evidence 702 shall be made by motion, specifically stating the basis for the objection and identifying the objectionable testimony, within 30 days of receipt of the written report of the expert's proposed testimony, or **within 30 days of the expert's deposition**, if a deposition is taken, **whichever is later**" (Emphasis added).

7.     Dr. Peters is not a licensed peace officer in the State of Texas nor any other state in the United States. He hasn't been employed as a police officer since 1978. In addition, he worked one year in patrol, four years as a deputy sheriff doing courtroom security, jury background investigations, served civil papers and warrants, and transported prisoners. [Dkt. 193, Exhibit 11—Tab 1, and **Exhibit B, Peters' Depo 117:6-121:12**].

---

[1] *Graham v. Connor,* 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

## III.
## GROUNDS FOR EXCLUSION

8.     Dr. Peter's prepared a Preliminary Report for this case in January 2021, which was done **before** he had the SAPD policies or training material.  His Report was never amended, even though he received additional documents, after providing that Report, the additional materials shown on **Exhibit A**.  After his report he got over 1,000 additional pages of material, including the San Antonio Police Department ("SAPD"_manual (policies)) and 29 still images from the BWC video in Tanwar's Report dated February 15, 2021.  Dr. Peters was not provided the 1,000 plus still images (decompressing the BWC video), or Tanwar's Supplemental Report dated April 20, 2021. He did not have any SAPD training material. **[Exhibit B, Peters' Depo 88:5-20].** This is a vast amount of additional evidence, with no supplementation or further development of his "Preliminary" opinions originally offered four to five years ago.  This underscores his failure to show actual training standards or policies in the SAPD, or Texas generally, that were violated by this Officer when faced with an objective belief that he was about to be shot.  It shows the failure to show a valid and reliable methodology, instead of reaching a predetermined outcome.

9.     FED. R. EVID. 702, notes to 2,000 amendments ("the testimony must be the product of reliable principles and methods that are reliably applied to the facts of the case.")).  "[T]he proponent of the expert ... has the burden of proving admissibility."  Overall, Dr. Peters' deposition excerpts show he has not done that for his criticisms or opinions about failing to follow policy and training about excessive force.  They involve separate issues of tactics like a bad choice to knock and talk.  A bad choice not to take cover or conceal himself.  Then Peters has decided there was no gun, and that any reasonably perceived threat of a weapon was no longer imminent.  This is not an opinion on police training and policy, nor on *Graham v. Connor* as applied to this incident.

This is taking over the jury's role and is improper. *Valencia v. Davis*, 836 F. App'x 292, (5th Cir. 2020), see below at ¶40.

**A.     Dr. Peters should be limited to his Report.**

10.     An expert hired for purposes of litigation must provide a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). Dr. Peters does not identify any practices, procedures, or training modules used by the SAPD to support his opinions critical of Officer Casanova's conduct.   Nor does he do that for Texas law enforcement agencies or Texas Commission on Law Enforcement ("TCOLE").   Instead, he relies on general references to "well-established police procedures, standards and norms" or "standard procedural training." [Dkt. 193, Exhibit 11—Tab 1, pp. 7, 8, 12, 14, 18-20]. This is common to his methodology.   See *Fuller v. Kitsap County*, No. C16-5407BHS, 2017 WL 11431982, at *2 (W.D. Wash. Oct. 30, 2017) (excluding Mr. Poort's testimony in part because he failed to identify the local policies or national standards against which he was evaluating the officer's conduct).   His opinions are largely unmoored from any standard or analysis.

11.     The sources and references he claims apply have not been excerpted to show their applicability to our facts.   He essentially invites the Court and the parties to "go look it up."   None of his policy or training failures have been placed into context. For instance, Dr. Peters' conclusion, "Based upon my education, training, and experience, Officer Casanova knew from his Academy training that the elements were not present for him to use deadly force on Mr. Snowden and/or on Mr. Roundtree and knew that any deadly force used by him violated national use-of-force standards, training, and recommendations based upon the totality of the circumstances known to him at the time,"  is a classic "ipse dixit." [Dkt. 193, Exhibit 11—Tab 1, p. 14].   He does not

explain what training he refers to, or which elements were lacking.  When he uses the phrase "national use of force standards," he means the constitutional law standard under *Graham v. Connor,* so that part of his opinion invades the province of the jury, and is the ultimate issue. **[Exhibit B, Peters' Depo 18:18-19:4].** Opinions based on undisclosed standards and unsubstantiated comparisons are ipse dixits, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999).  It is not proper for the jury to accept his assertions as true simply because Dr. Peters said them.

12.     Dr. Peters' opinions should be disallowed.  Dr. Peters' Report lists seven opinions in the form of an Executive Summary, and expounds upon them.   Even if the Court allows some of Dr. Peters' opinions, the scope of the opinions offered at trial should be limited to the fair parameters of the listed opinions, at pp. 5-6 of that Report. [Dkt. 193, Exhibit 11—Tab 1].

## IV.
## ARGUMENT

### A.    Standard of Review.

13.     Federal Rule of Evidence 702 provides as follows:

> If scientific, *technical or other specialized knowledge will assist the trier of fact* to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts for data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principle and methods reliably to the facts of the case.

(Emphasis added.) Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable. *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993)**.**

14.     Under Rules 701 and 702, opinions must be helpful to the trier of fact. Moreover, Rule 403 provides for exclusion of evidence that wastes time or confuses the jury and the issues.  In this way, the Rules "afford ample assurances against the admission of opinions which would merely

tell the jury what result to reach." (Notes to FED. R. EVID. 704.) "When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *Elsayed Mukhtar v. California State Univ., Hayward,* 299 F.3rd 1053, 1066, n.10, (9th Cir. 2002), analyzing the issue under Daubert and Kumho.

15.     The admissibility of expert opinion testimony is governed by FED. R. EVID. 702.  An expert may present opinion testimony with respect to "scientific, technical, or other specialized knowledge" if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" FED. R. EVID. 702. To deem expert opinion testimony admissible under Rule 702 the district court must ensure that it is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589 (1993).

16.     In addition, "[e]xpert testimony, like any other testimony, may be excluded if, compared to its probative worth, it would create a substantial danger of undue prejudice or confusion." *United States v. Schmidt*, 711 F.2d 595, 599 (5th Cir. 1983), *cert. denied*, 464 U.S. 1041 (1984) (citing FED. R. EVID. 403). The need for a thorough Rule 403 analysis of opinion testimony is particularly important, because as the Supreme Court recognized in *Daubert*, "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than lay witnesses." *Daubert*, 509 U.S. at 595 (citation omitted).

17.     The trial court acts as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also

to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co.*, 526 U.S. at 141. "The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *E.E.O.C. v. S&B Indus., Inc.*, 2017 WL 345641, at \*2 (N.D. Tex. Jan. 24, 2017) (Fitzwater, J.) (internal quotation marks omitted) (citing *Kumho Tire Co.*, 526 U.S. at 147).

18.     "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593); *see also* FED. R. EVID. 702(d) (requiring that an "expert has reliably applied the principles and methods to the facts of the case").

19.     "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight*, 482 F.3d at 355. "The reliability prong mandates that expert opinion be grounded in the methods and procedures of science and ... be more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (internal quotation marks omitted). The reliability prong mandates that expert opinion "be grounded in the methods and procedures of science and ... be more than unsupported speculation or subjective belief." *Id.* (citing *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786); *see also Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir.1998) (en banc) ("[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable."). The relevance prong requires the proponent to demonstrate that the expert's "reasoning or methodology can be properly applied to the facts in issue." *Curtis,* 174 F.3d at 668 (citing *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786).  Id., at 459.

20.    "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (internal quotation marks omitted). If "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

21.    Courts consider the following non-exclusive list of factors when conducting the reliability inquiry: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. *Johnson*, 685 F.3d at 459 (internal quotation marks omitted).

22.    Dr. Peters does not rely on any recognized theory, did not have any SAPD policies or training materials for his analysis, and does not identify applicable policies or actual training, whether peer reviewed or not.  He does not demonstrate any relationship between his pronouncements and to general acceptance among qualified analysts of police conduct.

**B.    Peters' Opinion No. 6 should be stricken.**

23.    Number 6 deals only with his radio statement of "shots fired," which occurred after he discharged his weapon.  It has no relevance to the issues for the jury.  He does not claim that broadcasting that "misleading" information was a violation of training or standards under the constitution.  He admits that it was not the cause of any injury in this case, because it was after the fact.  **[Exhibit B, Peters' Depo pp. 102:14-103:10].** As a result, it is irrelevant and has no basis for admissibility. Whether it is a policy violation policy or training violation or not makes no

difference. It has no constitutional dimension and is irrelevant.  It would only confuse the jury, suggesting that peripheral details of policy have a bearing on the actual issues in this case.

**C.    Peters' Opinions Numbers Four and Five.**

24.    Other than irrelevant Opinion No. 6, only two others offer explicit conclusions against Officer Casanova. Dr. Peter's Opinion No. 4 is a conclusory and generic statement, and standing alone, falls far short of the requirements for witnesses under FED. R. EVID. 702.  *Fuller v. Kitsap County*, supra., 2017 WL 11431982 at *2; *see also*, *U.S. v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994). Opinion No. 5 is about failure to use cover and concealment as a tactic.  That is Dr. Peters' only explicit finding against Officer Casanova on policy or training issue.  It also does not meet the standard for expert opinion testimony in this case because it does not identify any training or policy that applied to this Officer.  It fails to show that the general tactical option applies or was taught for this factual scenario.  Dr. Peters admits that no agency teaches cover/concealment as a defense or response to a subject's deadly force.  [**Exhibit B, Peters' Depo 70:2-25**].  He also admits that the use of a "knock and talk" option was permissible, [**Exhibit B, Peters' Depo 40:23-41:7; 56:22-24**] and that Officer Casanova was not aware of any specific gun or weapon danger in advance. [**Exhibit B, Peters' Depo 43:22-25**].

**D.    Opinion Number 7 concerns City of San Antonio.**

25.    This is one of Dr. Peters' criticisms of the City of San Antonio, and he agrees.  [**Exhibit B, Peters' Depo 45:9-21**].   However, it refers in passing to the "outrageous conduct" of Officer Casanova.  The Report does not enumerate that conduct, and fails to connect any specified conduct beyond Opinion No. 5 to violations of policy or training standards that caused the injuries and death in this case.  At his deposition, Dr. Peters stated that the unspecified outrageous conduct was

Officer Casanova [**Exhibit B, Peters' Depo 85:4-86:20**].  For these reasons this opinion and the "outrageous" characterization should not be admitted against Officer Casanova.

**E.      No SAPD or Texas policy violation.**

26.      No policy is identified for the "cover and concealment" issue in Opinion No. 5.  Dr. Peters generically refers to a textbook, which includes a chapter on tactical discussion of cover and concealment to avoid officer safety risks.  He cites only a definition and does not apply that resource to these facts at all.  His report only says:

> In their leading text, **Street Survival: Tactics for Armed Encounters**, Adams, McTernan, and Remsberg (1980) defined *concealment* as pertaining, "to protection from being *seen* by a suspect. It may be provided by natural man-made objects— bushes, brush, small trees, tall grass . . . that will *hide* your presence or movements from your adversary" (p. 158). This officer safety tactics continues to be taught today (Remsberg, Marcou, & Glennon, 2018).

[Dkt. 193, Exhibit 11—Tab 1, p. 19].

27.      The referenced pages in a textbook say nothing about approaching a door without prior knowledge of potential weapons or violence, and nothing to do with using cover as a defense in response to actual or perceived imminent deadly force.

**F.      No SAPD or Texas training standards.**

28.      No training is identified that was violated by Officer Casanova.  His Report does not list any training standard in the San Antonio Police Department or in the TCOLE requirements for Texas officers that would have required a different approach at the door of the residence at 217 Roberts. Dr. Peter's opinion is not supported by any personal experience or training on this topic in the context of a confrontation where the officer testifies that he saw the deployment of a firearm against him as an imminent threat.  Dr. Peters does not only fail to evaluate SAPD training on cover/concealment in this factual scenario, he admits that he had no information about it. [**Exhibit B, Peters' Depo 88:5-89:11].**  The same is true for TCOLE training standards.

*Def Casanova's MTE Peters*                                                                                          11

29.     However, neither his Report nor his deposition testimony is supported by any training in Texas that requires those approaches to be used. In this context, he admits that he does not know the portion of San Antonio policies that would require it.  **[Exhibit B, Peters' Depo 30:1-3].**  He admits that it is not a part of Use of Force Section 501 involving the use of force and deadly force. He admits that he did not review any San Antonio lesson plans or curriculum materials involving that aspect of his opinion. [**Exhibit B, Peters' Depo 88:5-20**].

**G.     Peters' concluded there was no gun.**

30.     It is clear that Dr. Peters' analysis is founded upon his factual conclusion that Davante Snowden actually did not have a gun.

```
19        Q.  Okay.  So and I think I understand that it's
20   clear that a large basis for your opinion is, is that
21   this jury should evaluate my client's conduct with the
22   understanding that there was no gun at all, right?
23        A.  That's a large piece of it, yes.
```

[**Exhibit B, Peters' Depo 77:19-23**].

31.     To begin with, it is beyond Dr. Peters' scope of expertise to decide those facts. His Report does not claim to decide the facts, or who is telling the truth, and he testified that he was not doing so.  **[Exhibit B, Peters' Depo 17:7-25].**  But then he testified:

```
16        Q.  So my questions were focussed on who the
17   officer was shooting at and that was Mr. Snowden,
18   correct?
19        A.  No, I think he was shooting into the house.
20        Q.  How do you reach the conclusion that my officer
21   intended to shoot anybody other than Mr. Snowden?
22        A.  Well, we have a dead guy.  And I don't think
23   that was a mistake.
24        Q.  Okay.  Thought it was on purpose?
25        A.  He intended, based on the video evidence, and
```

```
1   his own testimony to shoot into a building that he knew
2   was occupied.
```

**[Exhibit B, Peters' Depo 63:16-64:2]**

He also admits that if Officer Casanova was in fact confronted by an imminent threat of deadly force by a firearm in the hands of Davante Snowden, that (1) cover and concealment might not be feasible or indicated:

```
 2        Q.  All right.  And you're not saying that if in
 3   fact there was a gun and the gun was pointed at him that
 4   he should've tried to move out of the way?
 5        A.  If there was a gun and it was directly pointed
 6   at him, which doesn't show in the video --
 7        Q.  I understand.
 8        A.  There's no (unintelligible).
 9        Q.  All right.  That's never --
10            THE REPORTER:  I'm sorry, there's no?
11        A.  If the gun were pointed at Officer Casanova,
12   which my understanding doesn't show in the video at all,
13   so if that's a hypothetical there may not have been time
14   to move out of the way.
15        Q.  Thank you.  And that's not a defensive tactic
16   that any agency teaches?
17        A.  No, people are taught that if you can move out
18   of the way, if you can, and it doesn't jeopardize
19   anybody, sure, move out of the way.
20        Q.  But it's a question of sufficient time?
21        A.  Time is a variable, yes.
22        Q.  Taking into account that reactionary gap
23   formula?
24        A.  Well, the reactionary gap can apply to many
25   different things, so time is a variable.
```

**[Exhibit B, Peters' Depo 70:2-25]**

and (2) that the officer's right to self-defense overrides other training considerations to the presence of third parties who might be hit:

```
 7      Q.  So, in your opinions about the recklessness of
 8  shooting into this house, I want to try to get a clear
 9  answer about whether or not it is your analysis that if
10  a police officer is in fact facing the imminent gunfire
11  from an assailant with a weapon, that that police
12  officer has to hold their fire, maybe at the loss of
13  their life because somebody in the background might get
14  hit, is that your opinion about what the standard is
15  about policing in the United States?
16      A.  No.  If you're staring down the barrel and you
17  think you're going to be shot and it's imminent, you
18  have to do what you have to do.
```

[**Exhibit B, Peters' Depo 72:7-18].**

32.     Dr. Peters does not offer training or policy opinions on what officers should do in the context of assumed facts.  He has resolved a fact issue in this case even though he claims that he is making no credibility determinations.  [**Exhibit B, Peters' Depo 17:7-10].**  As a result, his opinion is beyond his expertise, and falls into the realm of undue weight or confusion for the jury.  His reasons are really just Plaintiffs' arguments in this case.  Foremost is the lack of DNA or fingerprint evidence tying Davante Snowden to possession of the gun and ammunition magazine found at the premises. [**Exhibit B, Peters' Depo 77:24-78:5 and 83:2-84:9].**  He views the body-worn camera video to reach a similar conclusion that he does not see a gun. [**Exhibit B, Peters' Depo 70:2-14; 72:19-25**].  He does admit that Davante Snowden's right hand is in his waist area during the course of his movement and to Officer Casanova's left during the few two to four seconds of the incident.  But he disregards the clear BWC view of his right hand in the same place on the left side of his waist, as he rises and moves across the field of view.  He disregards it, even though he viewed the video and agreed that it shows his hand in that position.  [**Exhibit B, Peters' Depo 90:23-92:8].**

**H.      This Court's fact questions.**

33.      Prior ruling, cited above, focused on, "How Snowden approached the front door, whether he possessed a gun, whether he reached for anything, whether he grasped something in his waistband, and whether he turned to walk away from Casanova are facts that are material to an excessive force determination."

34.      The jury must decide whether, based on what Officer Casanova knew and saw, a reasonable police officer could have believed that there was a weapon being brought to bear as an imminent threat of death or serious bodily injury.  The key issues are:

- Whether there was a gun, or it reasonably appeared there was a reach for one;
- Whether Davante Snowden's rapid rise, stand, and lateral movement across the room to Casanova's left clearly indicated to any reasonable officer that any threat of a weapon was no longer imminent;
- Whether Officer Casanova had any actual intention of shooting Charles Rountree when he pulled the trigger (noted by the Fifth Circuit)

35.      Dr. Peters offers nothing to the jury for their decision about whether Casanova saw a gun, and it is the one found at the scene.  He offers nothing about whether Casanova saw is a clear reflection of something metal at Snowden's waist, which was also captured on camera.  Nothing about whether Snowden's right hand across his body at his left side indicated a weapon in play, as he moved across the room, just a few feet from Casanova.  He has no special competence to determine whether Snowden, who was sideways when the bullet hit him, was still in position to use a weapon and injure Steve Casanova. [**Exhibit B, Peters' Depo 73:10-74:12**].  He relies upon the Plaintiffs' testimony about whether there was a gun, and essentially just takes a side, which is not science or expert evaluation.

**I.      Improper factual Determinations.**

36.      This Court should not allow him to base his opinion on his conclusions as to the facts or credibility of the witnesses.  That replaces the jury.  "Although expert testimony is not

objectionable simply "because it embraces an ultimate issue," an expert's opinion on ultimate issues can be excluded if it is otherwise inadmissible under the Federal Rules of Evidence. FED. R. EVID. 704". "When opinion testimony combines law and fact, the question is whether the opinion will help the trier of fact to understand the evidence or to determine a fact in issue." *Flores*, 2019 WL 1426313, at *12 (internal quotations omitted). Expert opinions as to whether a defendant violated the law are inadmissible. FED. R. EVID. 702; *see Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009). Whether an individual officer violated the Fourth Amendment, whether a clearly established law was violated, and whether the City violated the ADA are all legal questions that are not proper subject matter for expert testimony. *See Flores*, 2019 WL 1426313, at *12. Thus, to the extent Landers offers legal conclusions, Defendants' objection is sustained, and the Court does not consider such testimony. *Lewis v. Rosenberg Police Dep't,* No. 4:22-CV-2593, 2024 WL 4501972, at *6 (S.D. Tex. Aug. 8, 2024), report and recommendation adopted as modified sub nom. L*ewis v. Rosenberg Police Dep't*, No. 4:22-CV-2593, 2024 WL 4346748 (S.D. Tex. Sept. 30, 2024).

37.    Dr. Peters augments his factual determinations by trying to rely on "many different versions" or stories by Officer Casanova.  That is not proper expert witness evaluation, it is argument about credibility.  It should not be permitted.  The Court can see from his Report, and his answers under oath, that the so-called versions are not even inconsistent. Snowden started from a seated position, and moved at an increasing speed across the BWC frame. Whether he was accurately described as walking or running is not a "version" but part of a continuum in motion.  Once again, it is for the lawyers to argue and the jury to determine the truth. Reaching for a gun, pulling his shirt up, reaching for a gun, and eventually having a gun in his hand are all consistent with the continuum of movement that Casanova saw and described. [Dkt.

193, Exhibit 11—Tab 1, p. 18]. The jury must decide from the testimony and the BWC images if the facts support his decision to use deadly force. Dr. Peters should not be allowed to argue that his explanations involve falsification or that they are unreliable.

38.    Peters resolves the factual issue about the mistaken shooting of Charles Roundtree solely because Mr. Roundtree was in the field of fire directed at Davante Snowden. Dr. Peters has no basis for believing that Officer Casanova intended to shoot Charles Roundtree. He has no facts to suggest that Officer Casanova claimed that Charles Roundtree had a weapon or engaged in any threatening or aggressive conduct at all. **[Exhibit B, Peters' Depo 169:6-171:11]**. He assumed Casanova provided that information to Chief McManus. **[Exhibit B, Peters' Depo 231:25-232:4]**. All of these aspects of his opinion are based on resolving facts that are the jury's role in this case.

39.    Dr. Peters' conclusion that the shooting of Charles Roundtree was an intentional act as to Roundtree is again a credibility determination, where his expert testimony does not meet the standard for reliability. Dr. Peters' history and background does not show any expertise as to motivation or intent of persons or police officers. He reaches this conclusion, even though he agrees that if an officer is actually confronting the deployment of deadly force, that he is entitled to defend himself irrespective of the risk to other third parties in the field of fire. **[Exhibit B, Peters' Depo 44:11-45:8]**. This shows that his opinion is based on his determination that there was no gun, and no reason to fire in response. Dr. Peters also agrees that it is common police training and practice for an officer who lawfully decides to use Deadly to Fire twice to make sure that their defensive effort is effective. **[Exhibit B, Peters' Depo 67:24-68:8]**. This is completely at odds with his opinion that there must be a reassessment of the threat before the second shot is fired.

40.    In his deposition, he attempts to bolster the foundation of his report to include an argument about illegal entry precipitating a defensive response by Davante Snowden, but this is not a case where Mr. Snowden claims that he deployed a weapon to defend himself.  Snowden denies ever having any weapon at all, and Plaintiff Singleton says the same.  **[Exhibit B, Peters' Depo 107:14-22; 163:20-24]**.  The issue for the jury is whether or not Officer Casanova saw a gun, or perceived Snowden's actions and movements that reasonably appeared to be reaching for a weapon to use against him. Dr. Peters' opinion about alternative tactical approaches does not involve conduct required by the Constitution and should not be permitted.  Policy and training issues are not equal to the *Graham v. Connor* standards.  *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see also*, *Sheffield v. Doe*, 2012 WL 5198089 at *2, 3 (W.D. Tex. Austin Div, 2012). It will be up to the Court to instruct the jury about whether the constitutional standard means that knocking or pushing on the door at 217 Roberts left Officer Casanova without the right to defend his own life.  If he intentionally pushed the door, it does not change his right to fire if he indeed saw a weapon in the hands of Davante Snowden.  If the jury believes from his testimony and the BWC images that his belief was reasonable, it does not matter if there was no gun, or if there was one and forensic evidence cannot confirm possession by Davante Snowden.  It's not an appropriate basis for an expert witness to conclude that the subject did not have a gun. It is certainly not sufficient basis for an expert to conclude that he did not look like he had something that could have been a deadly threat to Officer Casanova.  These opinions suffer from the same infirmities which result in excluding experts in *Valencia v. Davis*.

> In his report, Miller offers two opinions. First, he states that the "use of force applied by Officer Davis against Mr. Valencia in this arrest situation was unreasonable and unnecessary." "Experts cannot 'render conclusions of law' or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020). "Reasonableness under the Fourth Amendment or Due Process Clause is a legal conclusion." *Id.* (citation omitted). We have thus affirmed the exclusion of

expert reports where, as here, they opine that a defendant's use of force was "unnecessary and objectively unreasonable" based on "well-established law enforcement use of force training and standards." *Id.*

*Valencia v. Davis*, 836 F. App'x 292, 299–300 (5th Cir. 2020).

**J.      Irrelevant policy/training violations.**

41.      Dr. Peters cites to a host of issues that are irrelevant to Officer Casanova's qualified immunity defense. He criticizes the conversations between Officer Casanova and other officers at the scene as a policy violations.  This is coupled with the opinion that inaudible times on the BWC recordings are policy violations.   He opines that Casanova should have approached his investigation differently by calling for more backup, taking more time to plan, preserving his cell phone as part of SAPD's investigation, misconstruing information regarding the description of the suspect, failing to use better words to announce his presence or who fired shots, not relied on his uniform as an indication of his presence as a police office, among others. Once again, these factual questions are irrelevant to determinations by the jury about whether Officer Casanova's use of his firearm in response to perceived threat of death or serious bodily injury was justified.  It is also improper for him to mix in his criticisms of policy or tactics that are not related or causal to his use of deadly force.  That confuses the jury, in violation of the cases cited, including Johnson and Kumho.  *Johnson v. Arkema, Inc.*, 685 F.3d 452 (5th Cir. 2012) *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

42.      Dr. Peters does not include in his Report any criticism of the officer's effort to knock on the door and have a voluntary conversation in this case.  He even admits that he had the right to do that.  **[Exhibit B, Peters' Depo 40:23-41:2]**.  He concedes that the officer knew that if he could not get to "probable cause," he had no option but to turn around and leave.  **[Exhibit B, Peters' Depo 42:14-19]**.  This Court should not permit Dr. Peters to mislead the jury with his personal reasons, not based on SAPD policy and training, and not based on Graham factors, that Officer

Casanova should not have gone to the door and knocked … or even knocked and pushed.  That conduct did not cause Davante Snowden to suddenly changed his demeanor, jump to his feet with "Who the fuck is this?" … move toward and then laterally a few feet from Casanova, while either pulling a gun or reaching in a manner that sure looked exactly like that.

**V.**
**CONCLUSION**

For the foregoing reasons, Defendant Steve Casanova respectfully requests that the Court exclude Dr. Peters' opinions, or, alternatively, limit such opinions in accordance with this Motion. Defendant request any other and further relief to which it may be entitled.

Respectfully submitted,

DENTON NAVARRO RODRIGUEZ BERNAL
SANTEE & ZECH
A Professional Corporation
2517 North Main Avenue
San Antonio, Texas 78212
Telephone:    (210) 227-3243
Facsimile:    (210) 225-4481
pbernal@rampagelaw.com
aruiz@rampagelaw.com
lfdenton@rampagelaw.com

BY:

PATRICK C. BERNAL
State Bar No. 02208750
LOWELL F. DENTON
State Bar No. 05764700
ADOLFO RUIZ
State Bar No. 17385600
COUNSEL FOR DEFENDANT
STEVE CASANOVA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of April 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Daryl K. Washington
Washington Law Firm, P.C.
325 N. St. Paul Street, Suite 3950
Dallas, Texas 75201

Thad D. Spalding
Shelby J. White
Durham, Pittard & Spalding, LLP
P.O. Box 224626
Dallas, Texas 75222

Mark Kosanovich
Fitzpatrick & Kosanovich
P.O. Box 831121
San Antonio, Texas 78283-1121

N. Mark Ralls
Hoblit Darling Ralls Hern Hernandez & Hudlow, LLP
6243 IH-10 West, Suite 601
San Antonio, Texas 78201

LOWELL F. DENTON