UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BERNICE ROUNDTREE, Individually And on behalf of the Estate of CHARLES ROUNDTREE, JR. and the Statutory Beneficiaries; TAYLOR SINGLETON; And DEVONTE SNOWDEN, *Plaintiffs,* § § § § § § § § § § | |
| VS. § CITY OF SAN ANTONIO, TEXAS § AND STEVE CASANOVA § *Defendants.* § § | CIVIL ACTION NO. 5:18-CV-1117-JKP |

### DEFENDANT CITY OF SAN ANTONIO'S MOTION TO STRIKE PLAINTIFFS' EXPERT WITNESS, DR. JOHN PETERS

TO THE HONORABLE JASON K. PULLIAM:

NOW COMES Defendant, the City of San Antonio, and files this its *Motion to Strike Plaintiffs' Expert Witness Dr. John Peters*, and in support thereof Defendant will respectfully show the following:

1.   This is a federal civil rights case brought under Title 42 U.S.C. §1983. The suit involves the alleged use of excessive force by San Antonio Police Department (SAPD) Officer Steve Casanova in a shooting incident which occurred in San Antonio, Texas on October 17, 2018. The Defendants are the City of San Antonio and Officer Steve Casanova. Plaintiffs are Patricia Slack, suing individually and as the surviving mother of Charles Roundtree, Jr., Taylor Singleton suing individually, and Davante Snowden suing individually. The remaining claim against the City of San Antonio in this case is for the alleged failure to train, supervise, and discipline based upon a ratification theory.

**2.** Plaintiffs designated Dr. John Peters as one of their experts in this matter. Plaintiffs provided a report from Dr. Peters. **Ex. A.** Dr. Peters' deposition was taken on March 13, 2025. **Ex. B, p. 1**. The City moves to have Dr. Peters stricken as an expert as fully set forth below. The City moves to have Dr. Peters stricken as a witness pursuant to FED. R. EVID. P. 401, 402, 403 and 702.

**3.** The Supreme Court's decision in ***Daubert v. Merrill Dow Pharmaceuticals, Inc.*** 509 U.S. 579, (1993) provides the analytical framework for determining whether expert testimony is admissible under FED. R. CIV. P. 702. ***Pipitone v. Biomatrix, Inc.***, 288 F.3d 239, 243 (5th Cir. 2002). Under FED. R. EVID. P. 702, expert testimony is admissible when it will assist the trier of fact. ***Daubert v. Merrill Dow Pharmaceuticals, Inc.*** 509 U.S. 579, 589 (1993). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; **(b)** the testimony is based on sufficient facts or data; **(c)** the testimony is the product of reliable principles and methods; and **(d)** the expert has reliably applied the principles and methods to the facts of the case.

**FED. R. CIV. P. 702.** Under *Daubert*, trial courts are to act as gatekeepers that make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be properly applied to the facts of the case. ***Daubert***, 509 U.S. at 592-93. Expert testimony must be both relevant and reliable. *Id.* To assist with the reliability prong, the Court in ***Daubert*** listed five non-exhaustive factors to guide a court in determining reliability. *Id.* The five factors are 1) whether the theory has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error of the method used; 4) the existence and maintenance of

standards controlling the technique's operation, and; 5) whether the theory or method has been generally accepted by the scientific community. *Id.*

Throughout a court's assessment of a proffer of scientific testimony under Rule 702, it should be mindful of other rules. *Id.* at 595.  Under Rule 403, courts can exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or is misleading to the jury. *Id.*

The trial judge's general gatekeeping obligation not only applies to scientific knowledge, but also to testimony based on technical and other specialized knowledge. **Kumho Tire Co. Ltd. v. Carmichael**, 526 U.S. 137, 141 (1999).  An expert's testimony can be based mainly on his personal observations, professional experience, education and training. **Pipitone**, 288 F.3d at 247. The proponent of the expert testimony must prove reliability by a preponderance of the evidence. **Moore v. Ashland Chem. Inc.**, 151 F.3d 269, 276 (5th Cir. 1998).  Nothing in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipsa dixit* of the expert. **General Elec. Co. v. Joiner**, 522 U.S. 135, 146 (1997).

The other prong goes to whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue and primarily goes to relevancy. **Daubert**, 509 U.S. at 591. Expert testimony which does not relate to any issue in the case is not relevant is therefore not helpful. *Id.*  A consideration under Rule 702 is whether the expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id.*

Whether an individual is qualified to testify as an expert is a question of law. **Huss v. Gayden**, 571 F.3d 442, 452 (5th Cir. 2009).  District courts must be assured that the proffered witness is qualified to testify by virtue of his/her knowledge, skill, experience, training or

education.  *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).  A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or given subject.  *Id.*  However, Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue.  *Huss*, 571 F.3d at 452.

4.    Dr. Peters' report contains an opinion wherein he is critical of the SAPD's Use of Force Policy and asserts that the policy is deficient, misleading, inaccurate and does not meet national standards, recommendations or guidelines.  **Ex. A, pp. 5-9.**  However, this Court has already held that the City's Use of Force policy was not unconstitutional.  **[Dkt. #218, pp. 13, 21.]**  Therefore, any testimony from Dr. Peters on the issue of the SAPD's Use of Force policy is not relevant since the issue of the policy's constitutionality has already been ruled upon.  As such, Dr. Peters should be precluded from offering any opinion regarding the SAPD's Use of Force policy.

5.    The City moves to strike Dr. Peters' testimony that a SAPD policy violation was committed when officers were not isolated after the shooting.  **Ex. A, p. 9.**  Dr. Peters stated the following:

> Based upon my education, training and experience as a prior law enforcement administrator and a lecturer on law enforcement policy and internal investigations, the City of San Antonio, its City Council, its Mayor, its Police Chief, and/or its police management failed to appropriately discipline the officers who shared and listened to information about the event, and/or failed to appropriately discipline supervisors who failed to tell the officers not to share information, and/or internal investigators who failed to report the sharing of information that violated policy.

**Ex. A, p. 10.**  This opinion is not relevant to any issue in the case nor is it reliable.  First, whether or not a supervisor who is not a party to this lawsuit was disciplined for failing to separate one officer from another would not constitute a constitutional violation.  Second, the mere speaking with another officer by Defendant Casanova about what transpired would not constitute a constitutional violation.  This Court held, citing to *Granstaff*, that the Fifth Circuit has recognized that ratification of an officer's actions or conduct by a municipality may establish the policy

element of a *Monell* claim.  **Roundtree v. City of San Antonio, Texas**, 2022 WL 903260, at *9 (W.D. Tex. Mar. 28, 2022).  There must be 1) policy; 2) of the city's policymaker; 3) that caused; 4) the plaintiff to be subjected to a deprivation of a constitutional right.  *Id.*  Any alleged policy violation would have needed to actually cause the constitutional deprivation.  Officers talking with one another after a shooting incident did not cause any Plaintiff to suffer a constitutional violation.

Furthermore, when Dr. Peters was queried about what facts were discussed between the officers that was not correct after the shooting, Dr. Peters admitted that he could not answer that because nobody was there except the officers.  **Ex. B, p. 154, ll. 7-11.**  Dr. Peters could not identify what facts were obscured or somehow twisted because of a conversation between Defendant Casanova and another officer.  **Ex. B, p. 154, ll. 21-25, p. 155, ll. 1.**  According to Dr. Peters he could not provide any facts because "they got together" and nobody else was there.  **Id**.  Dr. Peters' admissions demonstrate that he does not know what was stated between officers after the shooting and that he cannot provide any testimony that any information allegedly exchanged between the officers somehow affected the investigation.  These admissions show that any statements by Dr. Peters regarding the City not disciplining officers because they spoke after the shooting are unreliable, based on speculation, are not relevant and should be stricken.

6.   Dr. Peters' opinions and testimony claiming that Defendant Casanova violated the mobile video recording policy should be stricken.  For the same reasons discussed above in relation to an alleged policy violation of not separating officers, this opinion and testimony are not relevant nor reliable.  Whether Defendant Casanova failed to properly follow a policy regarding officers not muting their body worn cameras was not the cause of any constitutional violation.  Therefore, any opinion from Dr. Peters is not relevant since it was not the cause of a constitutional violation.  Additionally, when Dr. Peters was questioned about what information was not captured because a

body worn camera was muted or turned off, Dr. Peters admitted that he did not know what was said. **Ex. B, p. 166, ll. 20-25, p. 167, ll. 1-8.** When Dr. Peters was questioned about what specific information was not recorded because the camera was muted and that contradicted what Defendant Casanova had in his statement, Dr. Peters claimed that it was impossible to answer. **Ex. B, p. 167, ll. 9-15.** According to Dr. Peters, he did not know and the investigators did not know because they did not secure the phone. **Id., p. 167, ll. 15-18.** Again, Dr. Peters admittedly does not know what information was purportedly not captured on a body worn camera recording or that the information somehow was contradictory as to what Defendant Casanova wrote in a statement. Therefore, Dr. Peters' testimony is not relevant because he cannot show or otherwise demonstrate that it had any effect on the investigation. Dr. Peters guessing about statements being made that somehow were germane to the investigation is nothing more than speculation which is not reliable. Therefore, Dr. Peters' opinion or testimony that Defendant Casanova violated the policy related to officers muting their mobile recording devices should be stricken.

7.     Dr. Peters' report contains an opinion that that multiple and misleading versions about the shooting event were given. **Ex. A, p. 11-12.** Dr. Peters offers the opinion that various versions of the event must raise "red flags" to investigators and SAPD leadership about the accuracy of the descriptions and at the very least involve more investigation into the facts. **Id., p. 12.** In his report, Dr. Peters provides "NOTE: Veracity and credibility issues are not for me to determine. These issues are determined by the trier of fact." **Id.** Regardless of Dr. Peters' disclaimer about not making credibility determinations, Dr. Peters' assessments that there are multiple and misleading statements inherently involve him making assessments about the credibility of individual's statements which he cannot do. Therefore, the City moves that any opinions from Dr. Peters claiming that multiple and misleading versions of the shooting be stricken.

**8.**     Dr. Peters, in his report, asserts that the City has applied two investigation standards and methodologies.  **Ex. A, p. 14.**  According to Dr. Peters, there is one standard for civilians and another for police officers.  **Id.**    Again, Dr. Peters' opinions about two purportedly different investigations standards is not relevant to any issue in this case because whether two different standards existed did not cause any of the Plaintiffs to suffer a constitutional violation related to the use of excessive force.

Additionally, when Dr. Peters was queried about the two investigation standards and what the standard was for civilians, Dr. Peters referred to keeping civilians separated and not letting them converse.  **Ex. B, p. 208, ll. 10-18.**  When Dr. Peters was asked to clarify his report and whether the two investigation standards were for criminal investigations, Dr. Peters testified that the standards could be for either a criminal investigation or an internal investigation. **Id., p. 208, ll. 23-25, p. 209, ll. 1-2.**  Dr. Peters went on to explain that "usually" police officers are treated differently and asked "leading" questions which you never hear with a criminal suspects.  **Id., p. 209, ll. 3-10.**  After making his allegation about leading questions which are asked of police officers, Dr. Peters admitted that he had not seen the questions that were asked of Defendant Casanova. **Id., p. 209, ll. 11-14.**  Dr. Peters was further questioned about what other evidence was not collected and he could only refer to cell phones not being collected and that Defendant Casanova's rifle and ballistic vest were not collected. **Id., p. 209, ll. 15-23.**  When queried about how the rifle and the ballistic vest were not collected and how they would be relevant, Dr. Peters claimed that these items needed to be collected to make sure they were department issued property and not personal property, or that if it was personal property there was a waiver for use.  **Id., p. 210, ll. 1-4.**  However, there is no evidence in this case that the ballistic vest and rifle were not department issued property, or that they could not be identified as such simply by viewing them.

There is simply no basis for believing the ballistic vest and rifle were not department issued and Dr. Peters' opinion they should have been collected should be stricken as wholly unreliable. Turning to the cell phones, Dr. Peters could not point to any SAPD policy stating cell phones of the officers on the scene were required to be or even should have been collected.  When asked whether any police department in the United States requires the collection of cell phones of officers at an officer involved shooting, he testified he "thought" the LAPD and Las Vegas Metro Police Department required it.  **Id., pp. 201 - 202, ll. 21 – 12.**  He further testified he does not believe there is any national standard that requires the collection of cell phones of officers involved in an officer involved shooting as part of the investigation into the officer involved shooting.  **Id., p. 202, ll. 13 – 24.**  Again, Dr. Peters' opinion the officers' cell phones should have been collected as part of the investigation should be stricken as lacking in foundation and wholly unreliable.

While Dr. Peters opines on his contention that two different standards existed for investigating officers and civilians, Dr. Peters' own testimony demonstrates his opinion is unreliable.  While Dr. Peters claims that officers are provided leading questions, he admitted that he had not seen the questions that were asked of Defendant Casanova.  If Dr. Peters does not know which questions were asked of Defendant Casanova, he has no basis to assert Defendant Casanova was questioned any differently than another witness. Therefore, any opinions he has are unreliable and would be based on speculation and should be stricken.

**9**.      Additionally, Dr. Peters opines that Casanova was not properly disciplined.  When asked a very specific question about what discipline Defendant Casanova should have been subjected to, Dr. Peters stated Casanova should have been provided remedial training and maybe a use of force review. **Id., p. 219, ll. 18-25.**  Dr. Peters attempts to justify that opinion by stating that Officer Casanova entered a person's home without probable cause and that "[Detective Hines] said the

shooting was reckless, or Casanova's behavior was reckless." **Id., ll. 19-25.** However, it is undisputed that Casanova did not enter the house at 217 Roberts. Defendant Casanova clearly had the right to knock on the door at the house to engage in a "knock and talk." **See,** *United States v. Lewis,* 476 F.3d 369,381 (5th Cir. 2007)(officer's "knock and talk" strategy is a reasonable investigative tool.)

Dr. Peters testimony that Detective Hines said the shooting was reckless or Casanova's behavior was reckless, is misleading and his opinion should be stricken. In his deposition, Detective Hines was asked a broad, incomplete hypothetical question regarding whether firing into an occupied home not knowing where everyone in the home is located would be reckless. Hines agreed such conduct would be reckless. Deposition of Randal Hines, **Ex. C. pp. 71 – 72, ll. 16 – 1.** However, when Detective Hines was later asked if it would be reckless to shoot at a person close to him when he could see a gun, he stated it would not be reckless to shoot at that person. **Id., at p. 85, ll. 1 – 9.** Dr. Peters should not be allowed to offer an opinion based on a hypothetical question that does not accurately state the facts of the case at bar and is therefore unreliable and misleading.

10. Dr. Peters' report fails to provide any specific violations of policy alleged to have been committed by Defendant Casanova that the City should have disciplined him for apart from those previously addressed in this motion. Rule 26 FED. R. CIV. P. requires he provide "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). Dr. Peters simply states in his report that "[b]ased upon my education, training, and experience, Officer Casanova committed several policy violations, and when coupled with his many versions of the events, there are several bases for disciplining him. . . ." **Ex. A., p. 12.** Dr. Peters' fails to state what the policies are or how they were violated and what the several

bases for disciplining him are. Opinions based on undisclosed standards are ipse dixits and should be stricken as such.

11.    Dr. Peters should not be allowed to offer any opinion on whether the prosecution of Snowden for felon-in-possession was improper and was driven by the City of San Antonio in an attempt to cast a negative light on the occupants of 217 Roberts in order to protect Casanova and justify his conduct. Neither Dr. Peters' report nor his deposition testimony contain any opinions that anyone from the City had anything to do with whether the prosecution was driven by the City for the above reasons. The Federal Rules of Civil Procedure require that expert disclosures be accompanied by a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." Fed. R. Civ. P. 26(a)(2). *Fuller v. Kitsap Cty.*, 2017 U.S. Dist. LEXIS 179407, *2 (W.D. Wash, Aug. 23, 2016)

12.    Plaintiffs have asserted Monell liability claims asserting that the City ratified the conduct of Defendant Casanova. The City objects to Dr. Peters' report and any testimony wherein he makes legal conclusions that the City failed to conduct a thorough and objective Internal Affairs investigation and that resulted in the ratification of Defendant Casanova's conduct. In his report, Dr. Peters states:

> The City of San Antonio, it's leadership, and/or police leadership failed to conduct a thorough and objective Internal Affairs investigation into the fatal shooting of Mr. Roundtree, the shooting of Mr. Snowden, and the seizure of Ms. Singleton that appears will result in the ratification of Officer Casanova's outrageous conduct and which falls below internal investigative standards, recommendations, and guidelines.

**Ex. A, p. 21.**    Dr. Peters further states in his report that:

> If the Chief decided not to take any significant corrective action to alter Officer Casanova's outrageous behavior, such behavior would have been ratified by the City thereby creating or reinforcing an organizational atmosphere that intentionally, protected law enforcement officers and/or ratified law enforcement officer misconduct.

**Id.** Peters' statement that the City ratified the conduct of Defendant Casanova or appeared to ratify conduct should be stricken because Dr. Peters is making a legal conclusion. *See Vincente v. City of Rome, Ga.*, 2005 WL 6032876, at *54-55 (N.D. Ga. Jun. 28, 2005)(*court disallowed expert witness from offering opinion that city ratified the conduct of a sergeant because the opinion was a legal conclusion*); *Colson v. Cit of Bakersfield*, 2012 WL 2872802, at *37-38 (E.D. Cal. Jul. 11, 2012)(*in a case where plaintiff's expert witness opined that the failure to retrain or change training showed ratification, court held that expert's opinion lacked sufficient foundation, was an improper legal conclusion and was contrary to the legal requirements for ratification discussed in other authority*); *Tubar v. Clift*, 2009 WL 1325952, at *10 (W.D. Wash. May 12, 2009)(*holding that police practices expert was prohibited from using the term "ratification" in reference to the city's actions following the shooting because this term is likely to be a central and dispositive issue at trial as to municipal liability*). Therefore, any opinions or testimony by Dr. Peters that the City ratified the conduct of Defendant Casanova should be stricken because any such opinion is a legal conclusion which Dr. Peters cannot make.

## CONCLUSION

For the foregoing reasons, Defendant City of San Antonio respectfully requests the Court exclude Dr. Peters' opinions as set forth above, or, alternatively, limit such opinions in accordance with this Motion.

**[Signature on following page]**

Respectfully submitted,

FITZPATRICK & KOSANOVICH, P.C.
P.O. Box 831121
San Antonio, Texas 78283-1121
Telephone: (210) 408-6793
Facsimile: (210) 408-6797
mk@fitzkoslaw.com

 */s/ Mark Kosanovich*
MARK KOSANOVICH
State Bar No. 00788754

ATTORNEYS FOR DEFENDANT
CITY OF SAN ANTONIO

# CERTIFICATE OF SERVICE

I hereby certify that on the **14th** day of **April 2025**, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notifications of such filing to the following.

Daryl K. Washington
dwashington@dwashlawfirm.com
Washington Law Firm, P.C.
325 N. St. Paul Street, Suite 3950
Dallas, Texas 75201

Patrick Bernal
pbernal@rampagelaw.com
Adolfo Ruiz
aruiz@rampagelaw.com
Denton, Navarro, Rocha, Bernal & Zech A Professional Corporation
2517 North Main Avenue
San Antonio, Texas 78212

Thad D. Spalding
tspalding@dpslawgroup.com
Shelby J. White
swhite@dpslawgroup.com
Durham, Pittard & Spalding, LLP
P.O. Box 224626
Dallas, Texas 75222

 */s/ Mark Kosanovich*
MARK KOSANOVICH