# EXHIBIT B

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                     SAN ANTONIO DIVISION

 3    BERNICE ROUNDTREE,              )
      Individually and on behalf of   )
 4    the Estate of CHARLES           )
      ROUNDTREE, JR. And the          )
 5    Statutory Beneficiaries,        )
      TAYLOR SINGLETON and DAVANTE    )
 6    SNOWDEN,                        )
                    Plaintiffs,       )
 7                                    )
      VS.                             ) CIVIL ACTION NO.
 8                                    ) SA-18-CV-1117-JKP-ESC
      CITY OF SAN ANTONIO, TEXAS;     )
 9    and STEVE CASANOVA              )
                    Defendants.       )
10

11   ************************************************************

12                     ORAL DEPOSITION OF

13                JOHN G. PETERS, JR., Ph.D.

14                      March 13, 2025

15   ************************************************************

16       ORAL DEPOSITION OF JOHN G. PETERS, JR., Ph.D.,

17   produced as a witness at the instance of the Defendant,

18   and duly sworn, was taken in the above-styled and

19   -numbered cause on the 13th day of March, 2025, from

20   10:01 a.m. to 4:57 a.m., before Quinlyn Jones, CSR in

21   and for the State of Texas, reported by machine

22   shorthand, pursuant to the Texas Rules of Civil

23   Procedure and the provisions stated on the record or

24   attached hereto.

25
```



```
 1        A.   I have not personally investigated anybody for
 2   that, I've looked at other cases where that --
 3        Q.   Okay.  And in this particular case, you're
 4   making an issue of that in this report aren't you about
 5   what was discussed between the officers, correct?
 6        A.   Yes.
 7        Q.   Okay.  And I want you to identify for me every
 8   fact that was discussed between the officers that wasn't
 9   correct?
10        A.   I can't do that because nobody was there except
11   the officers.
12        Q.   Okay.
13        A.   You're asking me to disprove a negative, you
14   can't do that.
15        Q.   No, I'm asking you to identify for me what
16   facts were obscured because of a conversation between
17   two officers?
18        A.   Well, I can tell you that what's been obscured
19   is what came out that Roundtree had a gun and was shot.
20   That didn't just get invented by a detective.
21        Q.   No, I'm asking you what specific facts were
22   obscured because or somehow twisted because of a
23   conversation between Steve Casanova and another police
24   officer.  Identify those facts for me?
25        A.   I can't do that because they got together and
```



```
 1  nobody else was there.
 2       Q.   Okay.  Well, how do you know they got together
 3  and had a conversation that had anything that affected
 4  the facts for this case?
 5       A.   Because you've got five different versions of
 6  the facts.
 7       Q.   Okay.  Does that indicate that they didn't get
 8  together and collude as to what happened if they have
 9  five different version?
10                MR. WASHINGTON:  Objection, form.
11       A.   It says that the internal affairs investigators
12  didn't get to the bottom line here.
13       Q.   Okay.  What was the bottom line?
14       A.   The truth.
15       Q.   Okay.  What was the truth?  Did it come out?
16       A.   Well, the truth that initially didn't come out
17  was that Roundtree wasn't armed.
18       Q.   Okay.  And let me ask you this question because
19  you've gone back to this numerous times in your
20  deposition about Roundtree not being armed and that
21  somebody initially saying he was, isn't that correct?
22       A.   Correct.
23       Q.   Okay.  Do you have any evidence or facts to
24  support a contention that any internal affairs
25  investigator at the end of the investigation believed
```



```
 1         A.   No, I think in that case, I think it was Hines
 2   who put in the report sort of the opposite and said you
 3   know Casanova was reckless.
 4         Q.   (By Mr. Kosanovich) I'm sorry?
 5         A.   Reckless in the shooting.  In other words,
 6   moving, trying to explain the situation with Roundtree.
 7         Q.   Is it your testimony that Detective Hines wrote
 8   in a SAPD report that Casanova acted recklessly?
 9         A.   I think that was in his deposition I believe.
10         Q.   Okay.  Well, do you know whether or not he said
11   that as a conclusory statement or he said that as part
12   of a hypothetical question?
13         A.   I would have to go back and look at the
14   deposition testimony.
15         Q.   Well, do you know if all the facts were
16   presented to Detective Hines when he made that statement
17   about what occurred that night in that deposition?  Do
18   you know whether or not he had all those facts?
19         A.   I don't.
20         Q.   Okay.  So you say here there's a violation of
21   the mobile video recording policy?
22         A.   Right.
23         Q.   Okay.  What information are you claiming was
24   not captured because a body worn camera was muted, muted
25   or turned off?
```



1     A.   Well, I think Casanova said there's not a
2  policy we have to mute our cameras or audio really and
3  the video the body worn camera video shows they were
4  talking, it shows that Casanova was texting, using his
5  personal cell phone, so we don't know what was said.  We
6  have don't know if that was tactics, we don't know if
7  that was personal communication, we don't know what it
8  is.
9     Q.   Okay.  So I guess, similar question, I'm not
10 trying to be argumentative but do you have any facts
11 that you can sit here today and tell me that specific
12 information was actually not recorded because it was
13 muted and it contradicts something that Casanova said
14 that was part of his statement?
15    A.   That's an impossible question to answer.  If it
16 wasn't captured how would you know what was said, you
17 wouldn't, so no, I don't know and your investigators
18 never secured the phone so we don't know.
19    Q.   Well, let me ask you this about the phone,
20 we've gone over this, when you and I are talking on our
21 cell phones, let's say I call you, you'd agree with me
22 that that's not recorded, correct?
23    A.   Correct.
24    Q.   Okay.  And do you know how long a text message
25 can be retrieved?



```
 1              MR. WASHINGTON:  Casanova.
 2        A.    I'm sorry.  Casanova, I'm sorry.
 3        Q.    (By Mr. Kosanovich) Is there a policy that says
 4   that officers cannot use their cell phones?
 5        A.    I would have to go back and look at that whole
 6   policy manual.
 7        Q.    Well, you're saying there's an unwritten ground
 8   rule okay, and I'm asking you what's the ground rule,
 9   that the SAPD says that officers cannot use their
10   personal cell phones but they in fact do use them?
11        A.    They do use them and they're not collected as
12   part of evidence.
13        Q.    Okay.  Well, is there a SAPD policy that says
14   no matter what in a criminal investigation you have to
15   collect everybody's cell phone?
16        A.    I would have to go back and look at the policy.
17        Q.    Well, you've indicated to me that you've worked
18   with a bunch of different police departments and you've
19   done a lot of OIS investigation reviews, correct?
20        A.    Right.
21        Q.    Okay.  Do you of any police department in the
22   United States that requires everybody who's been
23   involved in an officer involved shooting that all of
24   their, by policy every one of their cell phones is
25   actually retained and taken into evidence by the police
```



```
 1  department?
 2       A.  Only --
 3              MR. WASHINGTON:  Objection, form.
 4       A.  Only if the cell phone was used during the
 5  event.
 6       Q.  (By Mr. Kosanovich) Okay.  Which department
 7  requires that?
 8       A.  I think LAPD requires it, I think Las Vegas
 9  metro requires it, I think North Las Vegas requires it,
10  I know North Las Vegas requires it, fire department
11  requires it, so there are policies out there to that
12  effect.
13       Q.  Okay.  But is there any requirement that the
14  police department hadn't placed a policy that said, no
15  matter in a criminal investigation even if the phone's
16  been used as part of the incident that it had to be
17  collected?  Is there any national standards that says
18  that has to occur?
19       A.  I don't believe there's a national standard no.
20       Q.  Okay.  Well you've referenced national
21  standards in your report, correct?
22       A.  In certain areas.
23       Q.  Okay.  So there's no national standard on that?
24       A.  No, Mr. Denton and I talked about national
25  standards regarding force.
```



1       Q.  Yes.
2       A.  I don't think I saw that document.
3       Q.  Okay.  In your report on page 13, you say
4   they've applied two investigation standards, one for
5   civilians and another for police officers that falls
6   below generally accepted police investigation practices
7   and shows favorable bias towards police officers.  You
8   see that?
9       A.  Right.
10      Q.  Well, there are two investigation standards
11  okay, what's the standard for civilians?
12      A.  Standards for civilians be to separate them,
13  not let them converse, you would have a standard of
14  collecting all the potential evidence at the crime
15  scene.  That was used or thought to be used and the
16  perpetration of possible crimes or criminal activity.
17      Q.  Anything else?
18      A.  That's pretty much it.
19      Q.  Okay.  So that's, so you're talking about two
20  different standards are those criminal investigation
21  standards?
22      A.  That was your question.
23      Q.  Right.  Well, in your report are you saying
24  there are two investigation standards, are those
25  criminal investigation standards?



1    A.   They can be criminal or they can be internal
2    affairs.
3    Q.   Okay.  So for the criminal investigation are
4    you saying there's a different standard for police
5    officers then?
6    A.   Usually the way police officers are treated in
7    the beginning and oftentimes leading questions are asked
8    to police officers such as, well you were in fear of
9    your life weren't you.  You never hear that with
10   criminal suspects.
11   Q.   Well, do you know if there were leading
12   questions asked to Officer Casanova?
13   A.   I haven't seen the questions that were asked of
14   him.
15   Q.   Okay.  And you mentioned, you collect all the
16   evidence being the cell phones, correct?
17   A.   Cell phones, purses, if somebody was carrying a
18   purse for example.
19   Q.   What other evidence wasn't collected by the
20   officers.  The detectives that night besides the cell
21   phones?
22   A.   I don't think they took the rifle or the
23   ballistic vest that Officer Casanova put on.
24   Q.   Okay.  How would that be relevant to the
25   investigation?



1     A.   Well, first of all to make sure it's department
2  issued property and it's not personal property.  Or if
3  it was personal property that you had a waiver to use
4  it.
5     Q.   What else didn't they collect besides that?
6     A.   And you would use that for a whole set of
7  questions regarding that.  You know, why'd you put it on
8  why'd you think it was necessary.
9     Q.   Anything else that they didn't collect?
10    A.   No, I think we've covered that this afternoon.
11    Q.   All right.  And in your report you talk about,
12 it says in here, again for purpose of brevity, the City
13 of San Antonio, its leadership, police leadership failed
14 to conduct a thorough and objective internal affairs
15 investigation into the fatal shooting of Mr. Roundtree.
16    A.   What page you on counsel?
17    Q.   I apologize, page 20.
18    A.   All right.  Thank you.  Did you say 10.
19    Q.   Twenty.
20    A.   Oh, 20, sorry, I misheard.  Okay.  I'm with
21 you.
22    Q.   It says result, the shooting of Mr. Roundtree,
23 the shooting of Mr. Snowden and the seizure of Ms.
24 Singleton, it appears will result in the ratification of
25 Officer Casanova's outrageous conduct which falls below



```
 1   be included in the disciplinary loop.
 2        Q.   Well, do you know that as a fact or you just
 3   speculating on that?
 4        A.   Again I would have to go back and look at the
 5   IA file to see if there was a recommendation.  I think
 6   there was, let me just look.  I don't know if Perez
 7   would've been involved in that, however details of the
 8   investigation authored by him, I would have to go back
 9   and look.
10        Q.   Anybody else, sir?
11        A.   Not that I recall sitting here.
12        Q.   Okay.  Do you have any contentions as to what
13   should've occurred with Officer Casanova post incident
14   as far as discipline or any other thing that should've
15   been taken in regards to him action that should've been
16   taken in relation to him by the police department?
17   What's your opinion on that?  Do you have one?
18        A.   Well, I think remedial training at a minimum.
19   I mean he entered a person's property without probable
20   cause.  The detective said that the shooting was
21   reckless or Casanova's behavior was reckless so I think
22   there's enough there to at least put him into remedial
23   training.
24        Q.   Anything else?
25        A.   Maybe include use of force review.
```



```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE WESTERN DISTRICT OF TEXAS
 2                        SAN ANTONIO DIVISION

 3    BERNICE ROUNDTREE,                )
      Individually and on behalf of     )
 4    the Estate of CHARLES             )
      ROUNDTREE, JR. And the            )
 5    Statutory Beneficiaries,          )
      TAYLOR SINGLETON and DAVANTE      )
 6    SNOWDEN,                          )
                     Plaintiffs,        )
 7                                      )
      VS.                               ) CIVIL ACTION NO.
 8                                      ) SA-18-CV-1117-JKP-ESC
      CITY OF SAN ANTONIO, TEXAS;       )
 9    and STEVE CASANOVA                )
                     Defendants.        )
10

11   *************************************************************

12                         ORAL DEPOSITION OF

13                   JOHN G. PETERS, JR., Ph.D.

14                          March 13, 2025

15   *************************************************************
                       REPORTER'S CERTIFICATION
16             DEPOSITION OF JOHN G. PETERS, JR., Ph.D.
                            March 13, 2025
17

18        I, Quinlyn Busby, Certified Shorthand Reporter in

19   and for the State of Texas, hereby certify to the

20   following:

21        That the witness, JOHN G. PETERS, JR., Ph.D., was

22   duly sworn by the officer and that the transcript of the

23   oral deposition is a true record of the testimony given

24   by the witness;

25        That the witness was located in Dallas, Texas;
```



John Peters                                                          March 13, 2025
                                                                     Page 246

1        That the amount of time used by each party at the
2   deposition is as follows:
3        Mr. Lowell Denton         .....02 HOURS:29 MINUTES
         Mr. Daryl Washington      .....00 HOURS:25 MINUTES
4        Mr. Mark Kosanovich       .....02 HOURS:33 MINUTES
5        That pursuant to information given to the
6   deposition officer at the time said testimony was taken,
7   the following includes counsel for all parties of
8   record:
9        Mr. Daryl Washington, Attorney for Plaintiffs;
         Mr. Lowell Denton, Attorney for Defendant;
10       Mr. Mark Kosanovich, Attorney for Defendant;
         Mr. Mark Ralls, Attorney Defendant.
11
12        I further certify that I am neither counsel for,
13  related to, nor employed by any of the parties or
14  attorneys in the action in which this proceeding was
15  taken, and further that I am not financially or
16  otherwise interested in the outcome of the action.
17       Further certification requirements pursuant to Rule
18  203 of TRCP will be certified to after they have
19  occurred.
20
21
22
23
24
25

