IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

TAYLOR SINGLETON, BERNICE          §
ROUNDTREE, AND AS                  §
REPRESENTATIVE OF THE ESTATE       §         SA-18-CV-01117-JKP
OF CHARLES ROUNDTREE, JR. AND      §
ALL STATUTORY BENEFICIARIES;       §
AND DAVANTE SNOWDEN,               §
                                   §
        *Plaintiffs,*               §
                                   §
vs.                                §
                                   §
CITY OF SAN ANTONIO, TEXAS,        §
STEVE CASANOVA, SAN ANTONIO        §
POLICE OFFICER;                    §
                                   §
        *Defendants.*               §

**<u>ORDER</u>**

Before the Court in the above-styled cause of action are Defendant Steve Casanova's

Motion to Exclude or Limit Opinions of Dr. John G. Peters [#239] and Defendant City of San

Antonio's Motion to Strike Plaintiffs' Expert Witness, Dr. John Peters [#240], which were referred

to the undersigned for disposition.  The Court held a hearing on the motions on October 23, 2025,

at which counsel for all parties appeared via videoconference.  For the reasons that follow, the

Court will grant the motions in part to clarify that Dr. Peters may not give opinion testimony as to

certain legal issues in this case, but in all other respects the motions will be denied without

prejudice to Defendants challenging the reliability of the trial testimony of Dr. Peters through a

motion in limine and/or through objections at trial.

## I.  Background

This case arises out of the death of Charles Roundtree, Jr., and injuries to Plaintiffs Taylor Singleton and Devante Snowden when SAPD Officer Steve Casanova fired his service weapon in the living room of 217 Roberts Street.  The Fourth Amended Complaint [#173] asserts a Fourth Amendment excessive-force claim against Casanova pursuant to Section 1983 and seeks wrongful-death and survival damages as to Roundtree and damages as to the other two Plaintiffs' injuries.

The District Court denied Casanova's motion for summary judgment on qualified immunity, finding that fact issues remain as to what occurred during the use-of-force incident, and that these issues must be resolved prior to being able to determine whether Casanova acted in an objectively reasonable manner under the circumstances [#217].  These fact issues include the question of how Snowden approached the front door towards Casanova; whether Snowden possessed a gun or reached for any object at the time of the shooting; whether Snowden turned to walk away from Casanova; and, ultimately, whether Casanova could have reasonably believed that he faced an imminent threat at the time of the shooting. Casanova appealed, and the Fifth Circuit affirmed the District Court's denial of qualified immunity, agreeing with the District Court that, if a jury credited Plaintiffs' version of the events, a reasonable officer in Casanova's position would have known that using deadly force in those circumstances would violate the Fourth Amendment [#29].

The District Court granted the City's motion for summary judgment in part as to Plaintiffs' claim that the City's deadly force policy is unconstitutional and to the claims of false arrest by Plaintiffs Singleton and Snowden [#218].  The District Court denied the City's motion for summary judgment on Plaintiffs' municipal liability claim for failure to train, supervise, and discipline Casanova under a ratification theory.

The District Court has bifurcated trial, ordering that Plaintiffs' claims against Casanova be tried first for a determination of whether his use of force violated the Fourth Amendment and whether Plaintiffs are entitled to punitive damages, to be followed by a trial of Plaintiffs' claims against the City.

By the motions currently before the Court, both Defendants ask the Court to exclude Dr. John G. Peters from testifying as one of Plaintiffs' retained experts at trial, arguing that some of his testimony is not relevant and that Plaintiffs have not met their burden to demonstrate reliability under Fed. R. Civ. P. 702. In evaluating the merits of the motion, the Court has also considered Plaintiffs' consolidated response to Defendants' motions [#246] and Defendants' replies [#252, #253].

## II.  Legal Standard

Rule 702 permits expert opinion testimony only where the proponent of the expert can demonstrate that "it is more likely than not" that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Thus, in addition to proving any proffered expert testimony is relevant, Plaintiffs also bear the burden to demonstrate by a preponderance of the evidence that their expert witness has expertise and qualifications that will help the jury to understand the evidence or decide a disputed issue of fact and that the expert's opinions are sufficiently reliable.

The test for whether evidence is relevant is whether "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Civ. P. 401. Regarding reliability, the Supreme Court has identified four specific factors that a trial court should ordinarily apply when considering the reliability of scientific evidence: (1) whether the technique can or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique. *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579, 593–94 (1993). This test of reliability, however, is "flexible," and these factors "neither necessarily nor exclusively apply to all experts or in every case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). "Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142 (emphasis in original). "The proponent need not prove that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *see also* Fed. R. Evid. 702, Adv. Comm. Notes (2023).

Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. A district court enjoys broad discretion in determining the admissibility of expert testimony, and such decisions will not be disturbed on appeal unless a ruling is "manifestly erroneous." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997).

4

### III.  Analysis

Plaintiffs designated Dr. Peters as a retained expert to render opinions on the use of force by Casanova in light of national law enforcement policies, standards, and practices.  (Expert Designation [#78], at 3.)  Dr. Peters is a former law enforcement officer, deputy sheriff, and law enforcement administrator; has extensive relevant training and experience on the use of force by law enforcement; is a Certified Litigation Specialist in Police and Corrections by Americans for Effective Law Enforcement; and serves as President of the Prevention of In-Custody Deaths, Inc.  Defendants do not challenge Dr. Peters's qualifications to testify as a retained expert.  Rather, they challenge the relevance and reliability of Dr. Peters's opinions as expressed in his expert report.  (*See* Peters Expert Report [#240-1].)

Dr. Peters's expert report contains seven overarching opinions with numerous additional findings related to each opinion.  First, he opines that the City's policy on the use of force does not satisfy national standards.  (*Id.* at 6–8.)  Second, he opines that the City has created an organizational atmosphere demonstrating bias towards protecting its officers and ratifying their errant behavior.  (*Id.* at 9–13.)  Third, Dr. Peters finds that the City's standards fall below generally accepted police investigation practices and demonstrate bias in favor of its officers.  (*Id.* at 13–14.)  Fourth, he finds that the force used by Casanova was inconsistent with national standards.  (*Id.* at 14–17.)  Fifth, Dr. Peters opines that Casanova failed to use generally accepted safety tactics, which was a material cause of the shooting.  (*Id.* at 17–19.)  Sixth, he finds that Casanova misled other officers by reporting "shots fired" but never conveying to the officers that those shots were fired by him; reinforced the other officers' inaccurate impression of who had fired the shots by grabbing his long rifle and putting on his ballistic vest; and thereby placed the occupants in the

residence in a hostile environment.  (*Id.* at 19–20.)  Finally, Dr. Peters opines that the City failed to conduct a thorough investigation into the shooting.  (*Id.* at 20–22.)

**Relevance**.  Defendants challenge the relevance of several aspects of Dr. Peters's anticipated testimony, arguing that any opinion by Dr. Peters regarding Casanova's conduct immediately before the shooting and regarding actions by the City and Casanova after the shooting are irrelevant to the reasonableness of Casanova's use of force and to whether the City caused the constitutional violation by failing to train or supervise Casanova.  Defendants' objection as to relevance is overruled.

Casanova's pre-incident conduct will be considered by the factfinder as part of the totality of the circumstances surrounding the inquiry into the reasonableness of his use of force, and Dr. Peters's opinion on his conduct could assist the factfinder with that evaluation.  Dr. Peters's opinions regarding the post-incident conduct of Casanova may assist the factfinder in determining Casanova's state of mind at the time of the shooting, which could be relevant to Plaintiffs' claim for punitive damages.  The opinions of the expert regarding any post-incident conduct by the City, particularly surrounding the adequacy of its investigation into the incident, may help the factfinder in evaluating Plaintiffs' ratification theory of municipal liability, even if the testimony is not relevant to the question of causation.  Nothing in this Order precludes Defendants from raising relevance objections at trial.

**Reliability**.  Defendants also challenge several aspects of Dr. Peters's opinions as unreliable.  Defendants' reliability challenge is three-fold.  First, Defendants argue that Dr. Peters's opinions lack a reliable foundation because Dr. Peters did not have all relevant information before him at the time he authored his expert report and therefore should have amended his report and tethered his conclusions to specific SAPD practices, policies, and procedures and national

standards.  Second, Defendants contend that Dr. Peters improperly engaged in credibility determinations by resting his opinions on Plaintiffs' version of the events or disputed witness statements.  Third, Defendants argue that Dr. Peters cannot be permitted to testify as to his legal conclusions about the reasonableness of the use of force or adequacy of the City's investigation because to do so invades the province of the jury.

Regarding the foundation for Dr. Peters's testimony, the Court finds that any objection to Dr. Peters's trial testimony on this basis is best addressed in a motion in limine to be ruled upon by the District Court at trial in the context of the evidence presented.  Much of this expert's testimony relates to national standards and how Casanova's actions failed to comport with those standards in various ways, which goes to the overall reasonableness of his actions.  Moreover, despite Defendants' arguments to the contrary, Dr. Peters expressly cites SAPD policies in his report.  (*Id.* at 11.)  Any assertion by Defendants that Dr. Peters did not consider SAPD's policies in rendering his opinion is false.  Plaintiffs may raise any discrete objections to specific aspects of Dr. Peters's trial testimony for lack of foundation in the context of trial.

The argument that Dr. Peters engaged in improper credibility determinations does not provide a basis for excluding or limiting his expert testimony either.  Generally speaking, Dr. Peters is permitted to provide expert opinion regarding the incident in question and, in doing so, state that his conclusion is applicable if the jury finds Plaintiffs' version of the facts credible.  In other words, it is permissible for Dr. Peters to provide an opinion assuming that a factfinder finds a certain fact be true.  This is not the same as resolving credibility issues for the jury.

Relatedly, the City argues that Dr. Peters would be engaging in an improper credibility determination if he were to testify as he opined in his report that Casanova's "different and conflicting versions about the fatal shooting" should have raised "red flags" to SAPD leadership,

such that a more thorough investigation should have ensued. (*Id.* at 12.)    The Court disagrees. Dr. Peters is not opining improperly on whether Casanova is telling the truth or someone else is. He is opining, based on his training and experience, about what additional steps he would expect in a thorough investigation in the event that witnesses gave accounts of events that conflicted with each other or with other evidence. This is opinion testimony that could assist the jury in evaluating the thoroughness of the investigation and the conclusions of that investigation.

Regarding the argument that Dr. Peters's opinions invade the province of the jury by rendering legal conclusions, the Court has reviewed Dr. Peters's expert report and does not find most of his opinions objectionable. Rule 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). The Fifth Circuit has "repeatedly held that this rule does not allow an expert to render conclusions of law." *Snap–Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996) (citations omitted). Accordingly, Dr. Peters cannot testify at trial that the use of force by an officer was unreasonable under governing Fourth Amendment standards because that constitutes a legal conclusion. *See Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (affirming exclusion of expert testimony opining that officer's use of deadly force violated "well-established law enforcement use of force training and standards" and was "unnecessary and objectively unreasonable"). Often, only a fine line separates impermissible legal conclusions and expert opinions aimed to assist the factfinder in making the necessary factual determinations underlying that conclusion. In deciding whether an expert's opinion should be admitted, the court should focus on Fed. R. Evid. 702's standard of whether the opinion will assist "the trier of fact to understand the evidence or to determine a fact in issue." *Salas v. Carpenter*, 980 F.3d 299, 305 (5th Cir. 1992) (quoting Fed. R. Evid. 702).

Dr. Peters's expert report does not contain an opinion that Casanova violated the Fourth Amendment by using deadly force. However, Dr. Peters did opine in his report that officers are taught that the national standard regarding the use of deadly force is based on the Fourth Amendment's reasonableness standard, which requires consideration of the factors as set forth by the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 396 (1989). (Peters Expert Report [#240-1], at 14.) Dr. Peters expressly references those factors, mentions the *Graham v. Connor* standard, and opines in his report that Casanova knew from his training that the use of deadly force in the situation at issue in this case violated these national standards. (*Id.*) During trial, the District Court will instruct the jury on the relevant law and if it deems necessary, grant a motion in limine that sets the boundary between permissible testimony about reasonable standards versus legal instructions that will come from the Court. But Dr. Peters may testify, for example, that Casanova failed to follow specific SAPD procedures and/or national training standards in using deadly force (*id.* at 11) and that Casanova could have engaged in alternative actions as a responding officer besides discharging his weapon under the circumstances (*id.* at 16–17). He may also provide testimony to assist the jury in understanding the meaning of officer safety concepts, such as "cover and concealment," to allow the jury to contemplate other available alternatives that might have deescalated the incident rather than resulting in a fatal shooting. (*Id.* at 19.)

As to the City, Dr. Peters opines in his report that the City created an organizational atmosphere that demonstrates bias toward protecting officers and ratifying their behavior. (*Id.* at 9.) Some district courts have excluded expert opinion on "ratification" as impermissibly encompassing a legal conclusion in cases involving municipal liability, as here. *See, e.g.*, *Colson v. City of Bakersfield*, 1:10-CV-1776 AWI JLT, 2012 WL 2872802, at *13 (E.D. Cal. Jul. 11, 2012); *Tubar v. Clift*, 2009 WL 1325952, at *3–4 (W.D. Wash. May 12, 2009); *Vincente v. City*

*of Rome, Ga.*, No. 4:03-CV-0060-HLM, 2005 WL 6032876, at *20 (N.D. Ga. Jun. 28, 2005).  The Court concurs with the reasoning in this line of cases and will limit Dr. Peters to testifying regarding his belief that SAPD should have engaged in a more extensive investigation and more seriously disciplined Casanova after the incident.  Dr. Peters may not, however, testify that these deficiencies amounted to ratification under governing law.  In light of the foregoing,

**IT IS HEREBY ORDERED** that Defendant Steve Casanova's Motion to Exclude or Limit Opinions of Dr. John G. Peters [#239] and Defendant City of San Antonio's Motion to Strike Plaintiffs' Expert Witness, Dr. John Peters [#240] are **GRANTED IN PART** in that Dr. Peters may not testify to the legal conclusions that Casanova violated the governing Fourth Amendment standard for constitutional reasonableness in his use of force or that the City ratified such conduct through its policies and response to the incident.  In all other respects, the motions are **DENIED** without prejudice to Plaintiffs' objecting to Dr. Peters's testimony at trial or seeking to limit that testimony through a motion in limine.

SIGNED this 13th day of November, 2025.


ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE